# United States Court of Appeals
## For the Eighth Circuit

_____

No. 13-2231
_____

Christopher Gorog

*Plaintiff - Appellant*

v.

Best Buy Co., Inc.; Napster, Inc.

*Defendants - Appellees*

_____

Appeal from United States District Court
for the District of Minnesota - Minneapolis

_____

Submitted: May 14, 2014
Filed: July 24, 2014

_____

Before WOLLMAN, MELLOY, and BENTON, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

Christopher Gorog appeals from the district court's[1] dismissal of his amended complaint against Best Buy Co., Inc., and Napster, Inc., for breach of contract. We affirm.

_____

[1]The Honorable David S. Doty, United States District Judge for the District of Minnesota.

## I. Background

Gorog was the CEO of Roxio, Inc. In 2002, Roxio acquired the assets of Napster, an Internet file-sharing service. Roxio re-branded Napster, and Gorog assumed the role of Napster's CEO.

In 2008, Best Buy purchased Napster. Best Buy sought to continue the employment of Gorog and other Napster executives. Gorog entered into an employment agreement (the Employment Agreement) with Napster, which was then a wholly owned subsidiary of Best Buy. The Employment Agreement contemplated, among other things, that Napster and thereby Best Buy would employ Gorog until March 3, 2012, and that Gorog would be entitled to a performance award subject to certain conditions. The terms of the performance award were agreed upon in a separate document (the Award Agreement).

The Award Agreement provided that Gorog had "the right to earn a performance-based award, which may be comprised of a series of interim payments (collectively the 'Performance Award'), having a target value of $2,925,000[.]" The Award Agreement contemplated that Gorog would be eligible to earn the performance award at four specific performance target dates provided that he remained employed and that Napster achieved certain performance criteria measured on the performance target dates.

A few months after his employment began, Gorog decided to resign because he believed that Napster was not a priority for Best Buy. On December 31, 2009, in connection with his resignation, Gorog signed a Waiver and General Release (the Separation Agreement). The Separation Agreement provided that Gorog's employment would be terminated without cause and that Gorog would not release any claims to a performance award under the Award Agreement.

Sometime in the fall of 2011, Best Buy sold Napster to Rhapsody, another Internet music business. Rhapsody ceased operating Napster and transferred Napster's subscribers to Rhapsody's platform.

This contract dispute arises out of Best Buy's refusal to pay Gorog a performance award under the Award Agreement. Relevant to this dispute, the Award Agreement contained four "Forfeiture/Acceleration" provisions that addressed other circumstances in which Gorog would or would not be entitled to a performance award. The provisions read as follows:

> 2.4 Forfeiture/Acceleration
>
> (a) If, prior to the end of the Performance Period, your employment is terminated by reason of death or because you become Disabled, you will be entitled to receive a Performance Award equal to 100% of the Performance Award Target Value . . . .
>
> (b) If, prior to the end of the Performance Period, your employment is terminated by Napster without Cause or you terminate your employment with Napster for Good Reason, the Performance Period will continue and you will be entitled to receive a Performance Award equal to a pro-rata portion, based on the number of Whole Months you served during the Performance Period, of the Performance Award that otherwise would have been earned in accordance with the Performance Criteria Schedule . . . .
>
> (c) If, prior to the Performance Target Date, majority ownership of Napster (or any successor entity) is sold by Best Buy or spun-off to its shareholders, or if the venture ceases operations (the "Event"), you shall be entitled to receive a Performance Award equal to 100% of the Performance Award Target Value, regardless of whether the Performance Criteria have been met. . . .

(d)     If your employment is terminated during the Performance Period for any other reason, your rights to any Performance Award will be immediately and irrevocably forfeited.

Gorog filed a complaint against Best Buy alleging, among other things, breach of contract, and claiming that Best Buy owed him a performance award under section 2.4(c) as a result of its sale of Napster. Gorog then amended his complaint to add Napster as a defendant.[2] Best Buy moved to dismiss the amended complaint under Federal Rule of Civil Procedure 12(b)(6), arguing that the forfeiture and acceleration provisions were mutually exclusive and that because Gorog was terminated without cause, the only forfeiture and acceleration provision that potentially applied was section 2.4(b).

The district court granted Best Buy's motion. In doing so, the district court considered the Employment Agreement, the Award Agreement, and the Separation Agreement, which Best Buy submitted with its motion to dismiss. The district court concluded that the language of the forfeiture and acceleration provisions mandated that Gorog be entitled to a post-termination performance award only "if he satisfied one of the reasons for termination set forth in section 2.4 (a)-(c)." D. Ct. Order of May 8, 2013, at 9. Thus, because Gorog had not alleged that he was terminated due to death or disability or as a result of the sale of Napster, the district court determined that Gorog could recover only under section 2.4(b). The district court then noted that the amended complaint contained no allegation that Napster had satisfied the performance criteria as required by section 2.4(b). Consequently, the district court dismissed Gorog's breach-of-contract claim because Gorog had not alleged that he was entitled to a performance award under 2.4(b), the sole applicable forfeiture and acceleration provision.

---

[2]We refer to the appellees collectively as Best Buy for the remainder of this opinion.

## II. Discussion

Gorog advances two main arguments on appeal: (1) the district court erred by failing to convert Best Buy's motion to dismiss into a motion for summary judgment and, as a result, denied Gorog the opportunity to conduct reasonable discovery; and (2) the district court erred in dismissing Gorog's complaint for failure to state a claim for breach of contract.

### A. Federal Rule of Civil Procedure 12(d)

We first consider Gorog's argument that the district court erred by considering matters outside the pleadings without then converting Best Buy's Rule 12(b)(6) motion to dismiss into one for summary judgment, thereby denying Gorog an opportunity to conduct discovery.

"If, on a motion under Rule 12(b)(6) . . . , matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in [Federal] Rule [of Civil Procedure] 56." Fed. R. Civ. P. 12(d). "Rule 12(b)(6) motions are not automatically converted into motions for summary judgment simply because one party submits additional matters in support of or [in] opposition to the motion." Casazza v. Kiser, 313 F.3d 414, 417 (8th Cir. 2002) (alteration in original) (quoting Missouri ex rel. Nixon v. Coeur D'Alene Tribe, 164 F.3d 1102, 1107 (8th Cir. 1999)). A district court does not convert a motion to dismiss into a motion for summary judgment when, for example, it does not rely upon matters outside the pleadings in granting the motion. BJC Health Sys. v. Columbia Cas. Co., 348 F.3d 685, 688 (8th Cir. 2003).

Although Best Buy submitted voluminous documents with its motion to dismiss, the district court exclusively relied on the Employment Agreement, the Award Agreement, and the Separation Agreement in rendering its decision. Gorog

concedes that the Employment Agreement and the Separation Agreement are embraced by his amended complaint and thus were appropriately considered by the district court. Accordingly, we must determine whether the Award Agreement is a matter outside the pleadings such that conversion to summary judgment was required.

"Most courts . . . view 'matters outside the pleading' as including any written or oral evidence in support of or in opposition to the pleading that provides some substantiation for and does not merely reiterate what is said in the pleadings." Id. at 687 (omission in original) (quoting Gibb v. Scott, 958 F.2d 814, 816 (8th Cir. 1992)). "Though matters outside the pleading may not be considered in deciding a Rule 12 motion to dismiss, documents necessarily embraced by the complaint are not matters outside the pleading." Ashanti v. City of Golden Valley, 666 F.3d 1148, 1151 (8th Cir. 2012) (quoting Enervations, Inc. v. Minn. Mining & Mfg. Co., 380 F.3d 1066, 1069 (8th Cir. 2004)). "[T]he contracts upon which [a] claim rests . . . are evidently embraced by the pleadings." Mattes v. ABC Plastics, Inc., 323 F.3d 695, 697 n.4 (8th Cir. 2003); see also Stahl v. U.S. Dep't of Agric., 327 F.3d 697, 700 (8th Cir. 2003) ("In a case involving a contract, the court may examine the contract documents in deciding a motion to dismiss.").

We conclude that the Award Agreement is embraced by Gorog's amended complaint. Gorog quotes from the Award Agreement in paragraph 13 of his amended complaint:

Relevant here, the agreement contained two acceleration provisions. First, the agreement stated that, "[i]f, prior to the Performance Target Date, your employment is terminated . . . the Performance Period will continue and you will be entitled to receive a Performance Award equal to a pro-rata portion, based on the number of Whole Months you served during the performance period . . . ." Second, the agreement stated that, "[i]f, prior to the Performance Target Date, majority ownership of Napster . . . is sold by Best Buy . . . or the venture ceases operations . . .

-6-

you shall be entitled to receive a Performance Award equal to 100% of the Performance Award Target Value, regardless of whether the Performance Criteria have been met."[3]

(Alterations and omissions in original). Moreover, the Award Agreement is the sole basis for Gorog's complaint, as it is the contract upon which Gorog's breach-of-contract claim rests. See Mattes, 323 F.3d at 697 n.4. The Award Agreement is the contract that establishes Gorog's right to any payment of a performance award and sets forth the terms that dictate the circumstances in which Gorog would be entitled to receive a performance award. As the district court correctly noted, "the court need only examine the relevant terms of the . . . Award [Agreement]" to resolve this dispute. D. Ct. Order of May 8, 2013, at 7.

The district court considered only the pleadings and matters embraced therein. We thus hold that the district court's reliance upon the Award Agreement did not convert the motion to dismiss into one for summary judgment. Accordingly, we need not address Gorog's subsequent argument that the district court erred by failing to defer the motion for summary judgment under Federal Rule of Civil Procedure 56(d) to allow him to conduct meaningful discovery.

---

[3]Gorog acknowledges that his amended complaint refers to and quotes the relevant portions of the Award Agreement but contends that his amended complaint is based on a sample award agreement, because he never received a copy of the Award Agreement that Best Buy filed with its motion to dismiss. At oral argument, Gorog's counsel disputed whether the Award Agreement attached to Best Buy's motion to dismiss was in fact the final version of the agreement because it differed in two respects from the sample award agreement. Gorog, however, does not contend that the language of the forfeiture and acceleration provisions differs from that of the forfeiture and acceleration provisions in the sample award agreement. Because the relevant provisions of the Award Agreement are the same as those contained in the sample award agreement, the district court did not err in considering the forfeiture and acceleration provisions even though Gorog alleges that he did not receive a copy of the Award Agreement.

## B. Breach-of-Contract Claim

We turn now to Gorog's argument that the district court erred in dismissing his complaint for failure to state a claim for breach of contract.

"We review *de novo* the district court's grant of a motion to dismiss, accepting as true all factual allegations in the complaint and drawing all reasonable inferences in favor of the nonmoving party." Simes v. Ark. Judicial Discipline & Disability Comm'n, 734 F.3d 830, 834 (8th Cir. 2013) (quoting Richter v. Advance Auto Parts, Inc., 686 F.3d 847, 850 (8th Cir. 2012) (per curiam)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)); see also Fed. R. Civ. P. 8(a)(2) (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief"). "Where, as here, the claims relate to a written contract that is part of the record in the case, we consider the language of the contract when reviewing the sufficiency of the complaint." M.M. Silta, Inc. v. Cleveland Cliffs, Inc., 616 F.3d 872, 876 (8th Cir. 2010).

The parties agree that this case is governed by Minnesota law. The interpretation of an unambiguous contract presents a question of law. Travertine Corp. v. Lexington-Silverwood, 683 N.W.2d 267, 271 (Minn. 2004). "[C]ourts must read contract terms in the context of the entire agreement, and the terms should not be construed in a manner that leads to a harsh and absurd result." M.M. Silta, Inc., 616 F.3d at 877 (applying Minnesota law). "[W]e construe the parties' agreement as a whole and attempt to harmonize all clauses of the contract in order to give effect to the parties' intention." Medtronic, Inc. v. ConvaCare, Inc., 17 F.3d 252, 255 (8th Cir. 1994) (applying Minnesota law). "A contract should also be interpreted in a manner that gives meaning to all of its provisions." M.M. Silta, Inc., 616 F.3d at 877.

Gorog contends that he is entitled to a performance award under section 2.4(c) of the Award Agreement because the majority ownership of Napster was sold and the venture ceased operations. The crux of Gorog's argument is that section 2.4(c) requires only the sale or cessation of Napster for Gorog to recover a performance award without regard to whether Gorog had been terminated. In other words, according to Gorog, there is nothing in the language of the forfeiture and acceleration provisions that prevents Gorog from invoking section 2.4(c) after his termination without cause because sections 2.4(b) and 2.4(c) are not mutually exclusive. Best Buy responds by arguing that the provisions are mutually exclusive, as each provision describes a method by which Gorog's employment could terminate. According to Best Buy, section 2.4(c) applies only when Gorog is employed at the time Napster is sold or ceases operations, thereby effectively ending Gorog's employment relationship with Best Buy. Because Gorog's employment was terminated without cause, Best Buy argues, only section 2.4(b) can apply.

We conclude that Gorog's breach-of-contract claim is foreclosed by the plain language of the Award Agreement.[4] The forfeiture and acceleration provisions are mutually exclusive and thus Gorog is not entitled to a performance award under section 2.4(c). When read in isolation, section 2.4(c) seems to require only the sale or cessation of Napster without regard to whether Gorog had been terminated. When placed in context and read in conjunction with the other forfeiture and acceleration provisions, however, it becomes clear that section 2.4(c) describes a method by which Gorog's employment relationship with Best Buy could end. Sections 2.4(a) and 2.4(b) contemplate a performance award if Gorog's employment is terminated by death or disability or without cause. Section 2.4(d) provides that if Gorog's "employment is terminated during the Performance Period for *any other reason*," his

---

[4]In light of our holding, we need not consider Gorog's argument regarding the purpose of section 2.4(c). See Metro. Sports Facilities Comm'n v. Gen. Mills, Inc., 470 N.W.2d 118, 123 (Minn. 1991) ("Where a written contract is unambiguous, the court must deduce the parties' intent from the language used.").

right to any performance award would be forfeited. (Emphasis added). Section 2.4(d) thus implies that the sections preceding it outline the circumstances in which Gorog's termination would give rise to a performance award. The fact that section 2.4(c) does not contain the word "terminated" does not by itself compel a different result. Even without the word terminated, section 2.4(c) describes a method by which Gorog's employment relationship with Best Buy could end: upon the sale of Napster, Gorog's employment relationship with Best Buy would terminate because Best Buy would no longer own Gorog's employer. Thus, the forfeiture and acceleration provisions entitle Gorog to a performance award only if he is terminated for one of the reasons set forth in sections 2.4(a) through 2.4(c).

If we were to adopt Gorog's interpretation—that section 2.4(c) provides for a performance award regardless of whether Gorog had been terminated prior to the sale of Napster—section 2.4(c) would, in certain circumstances, conflict with the other sections of the forfeiture and acceleration provisions. For example, if Gorog had been terminated for cause before the sale of Napster, then section 2.4(c) would entitle Gorog to a performance award of 100% and section 2.4(d) would forfeit Gorog's right to a performance award. If Gorog had been terminated without cause before the sale of Napster and Napster later achieved the performance criteria, then section 2.4(c) would entitle Gorog to a performance award of 100% and section 2.4(b) would entitle Gorog to a pro-rated performance award. In these examples, both sections cannot apply, for one necessarily renders the other null. By interpreting the forfeiture and acceleration provisions as mutually exclusive, sections 2.4(a) through 2.4(d) are harmonized and will be applied without causing absurd results.

Moreover, as both parties acknowledged at oral argument, the Award Agreement provides for a single performance award. Indeed, the Award Agreement refers to "a Performance Award" and "the Performance Award," and never plural performance awards. The performance award is equal to a percentage of the performance award target value based on the achievement of the performance criteria.

The forfeiture and acceleration provisions provide for a performance award in circumstances in which Gorog would not be entitled to receive a performance award based on his employment and Napster's achievement of the performance criteria. Regardless of the manner in which Gorog qualifies for the performance award, he is entitled only to a single performance award. If we were to read the forfeiture and acceleration provisions as not mutually exclusive, they would provide for two performance awards if Gorog's employment had been terminated by reason of death or disability or without cause and the majority ownership of Napster had been sold. This interpretation conflicts with the language in the Award Agreement that establishes the right to a single performance award. Interpreting the forfeiture and acceleration provisions in the context of the entire Award Agreement, the provisions are mutually exclusive and provide for a performance award only upon termination because of one of the reasons set forth in sections 2.4(a) through 2.4(c).

Gorog is not entitled to a performance award under section 2.4(c) because his employment was terminated without cause, and thus section 2.4(b) exclusively applies. Because Gorog has not alleged in his amended complaint that Napster achieved the performance criteria required for Gorog to receive a performance award under section 2.4(b), he is not entitled to a performance award under the Award Agreement. Accordingly, he has failed to state a claim for breach of contract.

## III. Conclusion

The judgment is affirmed.

_____