**Leroy FARRIS and Crecia Farris, Plaintiffs,**

v.

**AMERICAN MEDICAL SYSTEMS, INC., Defendant.**

Case No. 4:15–cv–00093–SMR–CFB

United States District Court, S.D. Iowa, Central Division.

Signed August 14, 2015

James W. Carney, Nathan A. Mundy, Carney & Appleby PLC, Des Moines, IA, for Plaintiffs.

Bryan T. Pratt, Kelly G. Bieri, Sarah E. Lynn Baltzell, Shook Hardy & Bacon LLP, Kansas City, MO, Eric G. Hoch, R. Todd Gaffney, Finley Alt Smith Scharnberg Craig Hilmes & Gaffney PC, Des Moines, IA, Alana K. Bassin, Bowman & Brooke LLP, Minneapolis, MN, for Defendant.

## ORDER DENYING DEFENDANT'S MOTION TO DISMISS

STEPHANIE M. ROSE, JUDGE
UNITED STATES DISTRICT COURT

This removal products liability action stems from an allegation of a defective implant and resulting personal injury. An April 6, 2015, motion to dismiss by American Medical Systems, Inc., ("AMS") [ECF No. 4] is before the Court. Plaintiffs resisted on April 23, 2015, [ECF No. 9], and AMS replied on April 30, 2015, [ECF No. 10]. The parties did not request oral argu-

ment, and the Court deems one unnecessary. For the reasons outlined below, the motion to dismiss is DENIED.[1]

# I. BACKGROUND

## A. Jurisdiction

The Court's jurisdiction over LeRoy's claims is based on diversity. Plaintiffs are citizens of Iowa. AMS is a corporate citizen of Minnesota. Complete diversity exists between each Plaintiff and Defendant. The amount in controversy exceeds $75,000.00, exclusive of interests and costs, as LeRoy has alleged "permanent impairment and loss of use of his body." [ECF No. 1 at 18].[2] Consequently, diversity jurisdiction is appropriate over LeRoy's claims. 28 U.S.C. § 1332(a)(1).

AMS, the removing party, asks the Court to exercise supplemental jurisdiction over Crecia's claims against it.[3] Plaintiffs do not resist. The Court finds Crecia's claims are properly before it on supplemental jurisdiction. *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 558, 125 S.Ct. 2611, 162 L.Ed.2d 502 (2005) ("[Section] 1367(a) confers supplemental jurisdiction over all claims, including those that do not independently satisfy the amount-in-controversy requirement, if the claims are part of the same Article III case or controversy."); 28 U.S.C. § 1367.

## B. Factual Allegations

The Court accepts the following factual allegations from Plaintiffs' state court petition as true, unless noted otherwise.

LeRoy had a prostatectomy on April 2, 2008. On February 26, 2010, he had a penile implant placed inside him. The implant was designed and manufactured by AMS. Namely, it was the "AMS 700 MS (Momentary Squeeze)" model. That penile implant was revised on December 8, 2010.

On February 25, 2013, LeRoy's implant failed. On March 27, 2013, it was removed. A hole in the tubing near the pump was found. As a result of the faulty penile implant, on March 27, 2013, another penile implant designed and manufactured by AMS was placed. The second implant was the "AMS 700 MS (Momentary Squeeze)" model, too. On June 4, 2013, a representative of AMS made a statement to Dr. Richard Glowacki at the Iowa Clinic in Des Moines, Iowa, "that they felt terrible about the failure, that he felt responsible, and that he would make it right." [ECF No. 1 at 9].

On July 3, 2013, the second penile implant failed. Following an office visit, Dr. Glowacki got the implant to operate properly. On August 3, 2013, LeRoy inflated the implant, and the device malfunctioned. The implant would not deflate. Plaintiffs immediately reported to the emergency room of Mercy Hospital in Des Moines, Iowa. Dr. Steven Rosenberg saw LeRoy and tried in vain to deflate the implant. On August 5, 2013, LeRoy deflated the implant. On August 7, 2013, Plaintiffs returned to Dr. Glowacki. He was unable to get the implant to operate properly. The

---

1. LeRoy Farris and Crecia Farris (collectively "Plaintiffs") initiated suit in the Iowa District Court in and for Polk County on February 25, 2015. [ECF No. 1 at 8–19]. AMS notes it was served on March 3, 2015, and that the March 31, 2015, removal is timely. Plaintiffs do not suggest otherwise.

2. Plaintiffs did not ask the Court to remand the case back to state court. They do not appear to dispute the jurisdictional amount is

met in this case. Furthermore, the Court finds AMS has established by a preponderance of the evidence that a fact finder might legally conclude the damages here are greater than the requisite amount. *Bell v. Hershey Co.*, 557 F.3d 953, 959 (8th Cir. 2009).

3. AMS understands Crecia to allege derivative claims for loss of consortium. [ECF No. 1 at 2, 3].

implant was removed on September 6, 2013.

LeRoy has suffered two hospitalizations since the removal of the implant and needs specialized care with a urologist. LeRoy is now no longer capable of obtaining or maintaining an erection: the tissue required for an erection was removed during the placement of the implants. He cannot and will not be able to engage in sexual relations. Furthermore, he now suffers from uncontrollable urinary and bladder issues. Crecia has lost the companionship and intimacy of her husband.

### B. Relevant Procedural Background

Plaintiffs' state petition raises six claims against AMS: (1) design defect, (2) defective manufacturing, (3) breach of express warranty, (4) breach of implied warranty, (5) negligence, and (6) res ipsa loquitur. Each count contains within it a loss of spousal consortium claim by Crecia, too. Plaintiffs seek compensatory damages for past and future pain and suffering, past and future medical expenses, permanent impairment and loss of use of his body, past and future mental anguish and public humiliation, loss of consortium, as well as interest and costs of this action.

### C. Issues Before the Court

AMS moves to dismiss under Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"). It argues Plaintiffs' products liability and negligence claims in Counts 1, 2, 5, and 6 are preempted by federal law. It then suggests Plaintiffs' breach of warranty claims in Counts 3 and 4 were insufficiently pleaded. [*See* ECF Nos. 4; 5–1].

## II. ANALYSIS

### A. Standard for Rule 12(b)(6) Dismissals

Federal law requires "only a short and plain statement of the claim showing that the pleader is entitled to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007); *Zayed v. Associated Bank, N.A.*, 779 F.3d 727, 732 (8th Cir. 2015); Fed. R. Civ. P. 8(a)(2). Rule 12(b)(6) governs motions to dismiss for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Braden v. Wal–Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (internal quotation marks omitted) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)); *Twombly*, 550 U.S. at 570, 127 S.Ct. 1955. Though not a "probability requirement," the *Twombly / Iqbal* plausibility standard requires that plaintiff show that "success on the merits is more than a sheer possibility." *Braden*, 588 F.3d at 594 (internal citation and quotation marks omitted). A claim meets the plausibility standard when the court can draw from its factual allegations a reasonable inference of defendant's liability for the alleged misconduct. *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937.

In reviewing a claim for plausibility, courts rely on the following principles. First, they take plaintiff's factual allegations as true but may set aside legal conclusions. *Braden*, 588 F.3d at 594 (citing *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937). Second, courts draw any reasonable inferences that may be drawn in favor of the non-movant. *Qwest Commc'ns Co. v. Aventure Commc'ns Tech., LLC*, 86 F.Supp.3d 933, 994 (S.D. Iowa 2015). Next, they read the complaint as a whole, without viewing each allegation in isolation. *Braden*, 588 F.3d at 594 (citing *Vila v. Inter–Am. Inv. Corp.*, 570 F.3d 274, 285 (D.C. Cir. 2009)). Finally, courts draw on their judicial experience and common sense in evaluating a complaint in context. *Id.* (citing *Iqbal*, 556 U.S. at 679, 129 S.Ct. 1937).

State substantive law controls state law claims before federal courts sitting in diversity. *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *In re Baycol Prods. Litig.*, 616 F.3d 778, 785 (8th Cir. 2010). Iowa law thus governs the substantive matters in this case.

### B. Products Liability and Negligence Claims' Preemption

First, AMS contends Plaintiffs' products liability and negligence claims in Counts 1, 2, 5, and 6 are preempted by federal law because the implant model at issue had been approved by the Food and Drug Administration ("FDA").

#### 1. No Conversion to Summary Judgment

AMS includes several exhibits alongside its briefing. First, AMS attaches an FDA webpage screenshot as Exhibit A to its motion, suggesting the Court can take judicial notice of it at the Rule 12(b)(6) stage. [ECF No. 6 at 6]. Second, appended to AMS's reply are two more items filed as Exhibit 1 [ECF No. 10–1]: an affidavit by Ginger Glaser, AMS's Vice President for Regulatory affairs, and a copy of an FDA letter purportedly sent to AMS's Senior Regulatory Affairs Specialist Rick Bennett. As to this set of items, AMS footnotes its request that the Court grant it summary judgment under Rule 56(a) of the Federal Rules of Civil Procedure.[4] As a preliminary matter, the Court must therefore address whether this inclusion of exhibits converts the current motion to dismiss into a motion for summary judgment.

Generally, Rule 12(b)(6) motions are not automatically converted into motions for summary judgment simply because one party submits additional matters in support of or in opposition to the motion. *Gorog v. Best Buy Co.*, 760 F.3d 787, 791 (8th Cir. 2014). First, courts may still look to a variety of documents even at the 12(b)(6) stage, including (1) matters of public record, (2) matters that do not contradict the complaint, (3) exhibits attached to the complaint, and (4) materials necessarily embraced by the pleadings. *Miller v. Redwood Toxicology Lab., Inc.*, 688 F.3d 928, 931 (8th Cir. 2012); *Whitney v. Guys, Inc.*, 700 F.3d 1118, 1128 (8th Cir. 2012); 5B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357 (3d ed. 2004). Second, courts may decline to consider items that are not properly before them. *Sorace v. United States*, 788 F.3d 758, 767 (8th Cir. 2015).[5]

Here, the Court declines to convert AMS's motion to dismiss into a motion for summary judgment. First, Plaintiffs do not dispute AMS's argument that the Court may properly take judicial notice of the FDA webpage screenshot at the Rule 12(b)(6) stage. Fed. R. Evid. 201. Consequently, the Court does so. Second, the Court is aware that the affidavit and FDA letter are items outside the pleadings and cannot be considered without a conversion of the motion to one for summary judgment. *BJC Health Sys.*, 348 F.3d at 688.

---

**4.** AMS notes that, "[t]o the extent this Court considers submission of this letter to partially convert this motion to a motion for summary judgment, [AMS] respectfully request[s] this Court grant summary judgment [to it]." [ECF No. 10 at 1 n.2].

**5.** "A district court does not convert a motion to dismiss into a motion for summary judgment when, for example, it does not rely upon matters outside the pleadings in granting the motion." *Sorace*, 788 F.3d at 767 (internal citation and quotation marks omitted)); *BJC Health Sys. v. Columbia Cas. Co.*, 348 F.3d 685, 688 (8th Cir. 2003) ("There must be reliance by the district court on the matters outside the pleading before it can be said that a motion to dismiss has been converted into one for summary judgment.").

Plaintiffs, however, did not have a chance to address the inclusion of these items as part of AMS's reply. Furthermore, the Court's consideration of one-sided, summary-judgment type of evidence appears premature at this point. The Court declines to consider the items filed as Exhibit 1 alongside AMS's reply and does not convert the current motion to dismiss into a motion for summary judgment.

### 2. Plaintiffs' Claims Survive the Rule 12(b)(6) Review

Plaintiffs resist AMS's preemption argument. They concede that, generally, "common-law claims of negligence, strict liability, and implied warranty against manufacturer are preempted." [ECF No. 9–1 at 2]. They argue not all devices with pre-market FDA approval are preempted, however, and suggest preemption does not apply when a device has not undergone a rigorous pre-market approval process. [ECF No. 9–1 at 2–3 (citing *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 478–79, 116 S.Ct. 2240, 135 L.Ed.2d 700 (1996))].

■ Congress passed the Medical Device Amendments ("MDA") to the Food, Drug, and Cosmetic Act ("FDCA"), 21 U.S.C. § 360k(a), giving the FDA authority to regulate medical devices and expressly preempting certain state regulations. *Riegel v. Medtronic, Inc.*, 552 U.S. 312, 315–17, 128 S.Ct. 999, 169 L.Ed.2d 892 (2008). "The new regulatory regime established various levels of oversight for medical devices, depending on the risks they present." *Id.* at 316, 128 S.Ct. 999. "The devices receiving the most federal oversight are those in Class III." *Id.* at 317,

128 S.Ct. 999. MDA expressly preempts only those state requirements that are different from, or in addition to, any requirement applicable to the device under federal law. 21 U.S.C. § 360k(a)(1).[6]

In this case, the parties dispute which approval process the Momentary Squeeze ("MS") model implant underwent. Namely, AMS argues its evidence shows the implant underwent a product development protocol ("PDP") equivalent to the premarket approval ("PMA") of the FDA. As a result, AMS posits, "preemption is applicable." [ECF No. 10 at 2 (citing non-controlling caselaw)]. In contrast, Plaintiffs contend preemption does not follow when a product is marketed under the "§ 501(k) notification process." [*See* ECF No. 9–1 at 3]. Evidence that the penile implant model at issue in this case has undergone a rigorous PMA process is what is missing here, Plaintiffs contend. Specifically, they note AMS's FDA webpage screenshot shows nothing more than evidence of the FDA's 1998 approval of the AMS 700 series product line, not of any approval for the MS model. [ECF No. 9–1 at 1–2].[7]

■ Where courts can draw from a claim's factual allegations a reasonable inference of a defendant's liability for the alleged misconduct, the plausibility standard is met. *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937. Such is the case here. Taking Plaintiffs' factual allegations as true, *Braden*, 588 F.3d at 594, the Court will not weigh competing allegations at the motion to dismiss stage. Should early discovery reveal the MS model's actual approval process—information likely in AMS's posses-

---

6. Notably, § 360k does not prevent a state "from providing a damages remedy for claims premised on a violation of FDA regulations; the state duties in such a case 'parallel,' rather than add to, federal requirements." *Riegel*, 552 U.S. at 330, 128 S.Ct. 999 (quoting *Lohr*, 518 U.S. at 495, 116 S.Ct. 2240).

7. AMS replies by disputing Plaintiffs' characterization of the facts, arguing the approval process outlined in its Exhibit 1's affidavit and letter establishes the implant underwent a development process equivalent to that of FDA approval. [ECF No. 10 at 1–2]. As the Court outlined before, it does not consider Exhibit 1 at this stage.

sion—AMS is free to file a proper motion for summary judgment under Rule 56 before its deadline for doing so, allowing Plaintiffs to adequately respond. AMS's motion to dismiss on the grounds of preemption is thus DENIED.

### C. Breach of Warranty Claims

Finally, AMS argues Plaintiffs have insufficiently pleaded their breach of express and implied warranty claims in Counts 3 and 4. [ECF No. 5–1 at 8–10]. Namely, AMS contends Plaintiffs failed to specify (A) the context for the assertions creating an express warranty and (B) a particular purpose for the implant creating an implied warranty. Plaintiffs resist, suggesting they pleaded sufficient facts—to the extent known to them pre-discovery—to state a plausible claim. [ECF No. 9–1 at 5]. The Court agrees. A complaint need not *express* every element of a claim. The *Twombly* standard calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the claim. *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955. For the reasons outlined in Plaintiffs' brief, the AMS's motion to dismiss Counts 3 and 4 is DENIED.

### III. CONCLUSION

For the foregoing reasons, the motion to dismiss by AMS [ECF No. 4] is DENIED.

IT IS SO ORDERED.