# United States Court of Appeals

## For the Eighth Circuit

_____

No. 19-3258

_____

Kathleen W. Meardon, Individually, and as Successor in Interest to the Estate of
William A. Meardon; Lifetime Financial Group, LLC, an Iowa Limited Liability
Corporation; Financial Dynamics Group, Inc., an Iowa Corporation; Meardon
Financial Services, Inc., an Iowa Corporation

*Plaintiffs - Appellants*

v.

Terry Gene Register; Capital Marketing Group, Inc., a North Carolina
Corporation; Capital Insurance Planning, Inc., a North Carolina Corporation

*Defendants - Appellees*

_____

Appeal from United States District Court
for the Southern District of Iowa - Davenport

_____

Submitted: December 15, 2020
Filed: April 19, 2021

_____

Before SMITH, Chief Judge, LOKEN and MELLOY, Circuit Judges.

_____

MELLOY, Circuit Judge.

Plaintiffs appeal the district court's dismissal of their tort and contract claims
under Federal Rule of Civil Procedure 12(b)(6) for failure to state claims upon which

relief can be granted. Because Plaintiffs sufficiently stated claims for breach of contract, unjust enrichment, fraud, and breach of fiduciary duty under Iowa law, we reverse and remand for further proceedings as to those claims. We affirm in all other respects.

## I. Background

The following facts, as alleged in the Second Amended Complaint, are accepted as true. This suit arises from statements and actions that followed the sudden death of William Andrew Meardon, husband of Plaintiff Kathleen Meardon, on December 15, 2016. When he was alive, William owned and operated Lifetime Financial Group, LLC, an Iowa limited liability company, and Financial Dynamics Group, Inc., an Iowa corporation. He was licensed to sell insurance products through these entities.

As part of his business, William often worked with Defendant Terry Gene Register, a North Carolina resident. Register owns and operates Capital Marketing Group, Inc., a North Carolina corporation, and Capital Insurance Planning, Inc., a North Carolina corporation, which are both under his exclusive control. When working together, William would often sell insurance products with Register and Register's companies. In this relationship, Register typically acted as the "managing general agent" for sales while William was the "insurance producer" and "agent of record." When sales were made, both William and Register would receive a commission—William would receive a "producer commission" as the agent of record and Register would receive an "override commission" as managing general agent. Under Iowa law, an "insurance producer" means a person required to be licensed "to sell, solicit, or negotiate insurance." Iowa Code section 522B.1(6). To sell insurance products as an agent of an insurer, an individual insurance agent must be appointed by the insurer. William had the "producer appointments" necessary to be an agent.

-2-

After William's unexpected death, Kathleen was suffering from depression and shock. When the family held a wake for William, Register attended. While at the wake, he approached and spoke with Kathleen, telling her he would act as her personal business advisor and help her to transition William's insurance interests over to her control and establish her own business. Following the wake, Register repeatedly told Kathleen that he was an expert in business practices of the insurance industry, that "she could rely upon him to treat her interests above those of his own," and that he "would act honestly and in her best interest in his counsel and advice." Register "offered his assistance to complete the issuance of several large life insurance policies [William] had begun for close personal friends and business partners collectively" known for purposes of this litigation as "RK."[1]

Register "repeatedly assured" Kathleen that he, through his companies, would continue to honor the terms of the producer appointments with William. He also made assurances about making producer appointments with Kathleen's son, Levi, so that Kathleen's business could receive future commissions. Because of these assurances, she disclosed her future business plans to Register, including her intent to obtain the life insurance policies for RK, continue operating her various companies, and form a new entity, Meardon Financial Services.[2] Upon learning this

[1]Before William's death, William and Register were in the process of finalizing several life insurance applications for RK. It appears that, due to a missing medical check, an insurance application to Columbus Life Insurance was denied in November 2016. The application had listed William as the producer and Register as the managing general agent.

[2]In order to try to wrap up her husband's business, Kathleen initially obtained a Surviving Spouse License from the State of Iowa, under Iowa Code section 522B.10. The license, issued March 3, 2017, allowed her to act as the "insurance producer" for the business and to legally receive commissions for sales. By August 1, 2017, Kathleen formed a new corporation, Meardon Financial Services, Inc., and hired additional licensed insurance agents. Her son, Levi Meardon, was also a member of her team.

information, Register secured the domain name "meardonfinancialservices.com" without informing Kathleen, built a website, and directed all email inquiries from the website to his own company's website. Register has never relinquished control of the domain name or passed along the email inquiries to Kathleen.

At a later date, Register approached RK independently of Plaintiffs and told RK he was working to complete the life insurance sale on behalf of Plaintiffs. He was not. Instead, Register sold RK $20,000,000 in life insurance products through Principal National Life Insurance Company with Register listed as both the insurance producer and managing general agent. Register then avoided Plaintiffs and did not disclose that he obtained life insurance coverage for RK. Eventually, Kathleen and RK met and discovered that RK had already bought insurance from Defendants, without the intended commission going to Kathleen. On June 12, 2018, RK changed his insurance endorsement to Plaintiffs.

Also at a later date, Register discussed with Kathleen the possibility of her purchasing $6,000,000 in annuities. Register represented to Kathleen that (1) the annuities would fund immediately with a monthly payout of $25,000, and (2) Kathleen or another employee of Plaintiffs would be listed as a producer on the contracts and thereby receive a commission on the sale. Instead, Register provided, and Kathleen signed, applications for long-term, deferred annuities that would not begin to pay an income immediately. Contrary to Kathleen's understanding of the application, she was not listed as the insurance producer on the sale, nor was anyone from her company. Therefore, neither she nor her company received a commission from the sale. Register sent Kathleen three checks referencing her annuity purchases, totaling $120,000, and a fourth check with no reference for an additional $10,000. Kathleen deposited all but the last check.[3]

---

[3]The purpose of these checks is not made entirely clear by the evolving pleadings. However, it appears that Register recognized Kathleen was upset that her

Based on these allegations, Plaintiffs brought this diversity action in federal court asserting six claims under Iowa law: (1) fraudulent or intentional misrepresentation; (2) negligent misrepresentation; (3) breach of contract; (4) unjust enrichment; (5) misappropriation of trade secrets; and (6) breach of fiduciary duty. Multiple rounds of pleadings followed.

The district court ultimately granted Defendants' pre-answer motion to dismiss all six claims as asserted in Plaintiffs' Second Amended Complaint. As to the fraud and misrepresentation claims, the district court held Plaintiffs failed to sufficiently plead that Kathleen's reliance on Register's promises was justified under the circumstances. The district court similarly ruled Plaintiffs failed to adequately plead various elements of the other claims, including that (1) there was adequate consideration to establish an enforceable contract; (2) any enrichment to the Defendants was unjust; (3) the identity of RK constituted a trade secret; and (4) a fiduciary relationship existed between Register and Kathleen. In doing so, the district court relied on several documents, including contracts, mentioned in the Complaint and certain documents filed by Defendants. Noting that the result seemed unjust, the district court felt itself bound by law to dismiss the claims for inadequate pleadings. Plaintiffs filed a motion to amend the judgment under Rules 52(b) and 59(e), which the district court denied. Plaintiffs now appeal as to all claims.

## II. Discussion

We review de novo a grant of a motion to dismiss under Fed R. Civ. P. 12(b)(6). Adams v. Am. Family Mut. Ins. Co., 813 F.3d 1151, 1154 (8th Cir. 2016). We accept the well-pled allegations in the complaint as true and draw all reasonable

---

annuities were not set to pay income immediately and that he used the checks as a way to "tide her over." In 2018, Register sent Kathleen a 1099 for the $120,000, which he categorized as "nonemployee compensation."

inferences in the plaintiff's favor. Schriener v. Quicken Loans, Inc., 774 F.3d 442, 444 (8th Cir. 2014). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. We assess plausibility considering only the complaint and materials that are "necessarily embraced by the pleadings and exhibits attached to the complaint," Mattes v. ABC Plastics, Inc., 323 F.3d 695, 697 n.4 (8th Cir. 2003), "draw[ing] on [our own] judicial experience and common sense," Iqbal, 556 U.S. at 679. Further, we "review the plausibility of the plaintiff's claim as a whole, not the plausibility of each individual allegation." Zoltek Corp. v. Structural Polymer Grp., 592 F.3d 893, 896 n.4 (8th Cir. 2010). Federal Rule of Civil Procedure 9(b) requires a party alleging fraud to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). That is, the plaintiff must plead "the who, what, when, where, and how." Summerhill v. Terminix, Inc., 637 F.3d 877, 880 (8th Cir. 2011).

On appeal, Plaintiffs argue their pleadings were sufficient to present plausible claims. At first glance, the claims alleged appear implausibly Dickensian. However, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556 (2007). Keeping in mind that this case is only at the pleading stage, we turn to Plaintiffs' claims.

## A. Breach of Contract (Count III)

In Count III of the Complaint, Plaintiffs allege breach of contract. In order to show a breach of contract, Plaintiffs must prove: (1) the existence of a contract; (2) the terms and conditions of the contract; (3) performance of those terms and conditions; (4) breach of the contract; and (5) damages from the breach of the

contract.  See Molo Oil Co. v. River City Ford Truck Sales, Inc., 578 N.W.2d 222, 224 (Iowa 1998).

Plaintiffs' breach of contract claim is based on two oral agreements—one concerning the sale of life insurance products to RK and one concerning the sale of annuities to Kathleen.  As to the annuities, a written contract exists that contradicts the facts alleged by Plaintiffs.  Because its contents contradict the pleadings and defeat Plaintiffs' annuity-related contract claim, we agree with the district court that the annuity-related contract claim must be dismissed.  Gorog v. Best Buy Co., 760 F.3d 787, 792 (8th Cir. 2014); see also Stahl v. U.S. Dep't of Agric., 327 F.3d 697, 700 (8th Cir. 2003) ("In a case involving a contract, the court may examine the contract documents in deciding a motion to dismiss.").

Plaintiffs also allege Defendants breached an oral agreement under which Kathleen was to receive the producer commissions on the purchase of life insurance for RK and Register was to receive the override commissions.  Defendants argue no contract was formed due to a lack of consideration.  They argue that Register made a gratuitous promise to complete the sale to RK, which cannot constitute consideration. Defendants argue Count III was properly dismissed because the agreements between Kathleen and Register were not alleged to be supported by adequate consideration.

Consideration is an essential element of any binding contract.  Magnusson Agency v. Public Entity Nat'l Co.-Midwest, 560 N.W.2d 20, 26 (Iowa 1997). Under Iowa law, "the element of consideration ensures the promise sought to be enforced was bargained for and given in exchange for a reciprocal promise or an act." Margeson v. Artis, 776 N.W.2d 652, 655 (Iowa 2009).

> Thus, a promise made by one party to a contract normally cannot be
> enforced by the other party to the contract unless the party to whom the

promise was made provided some promise or performance in exchange for the promise sought to be enforced. In other words, if the promisor did not seek anything in exchange for the promise made or if the promisor sought something the law does not value as consideration, the promise made by the promisor is unenforceable due to the absence of consideration. In this way, a promise is supported by consideration in one of two ways. First, consideration exists if the promisee, in exchange for a promise by the promisor, does or promises to do something the promisee has no legal obligation to do. Second, consideration exists if the promisee refrains, or promises to refrain, from doing something the promisee has a legal right to do.

Id. at 655–56 (citations omitted).

Plaintiffs allege Register offered his assistance to Kathleen in securing the sale of life insurance products to RK. For completing the sale, Register was to receive the override commission. Register was not already entitled to the commission because—as Defendants point out—RK's previous application through Register and William Meardon had been denied. And, Register knew that RK was a personal friend of the Meardons who wished to complete the sale through the Meardons. Therefore, Register needed to make sure he still had access to the override commission on the sale of RK's life insurance. To do this, he contacted Kathleen, who told him she was still interested in working together to complete a sale to RK. RK's relationship with Kathleen and desire to purchase the insurance through her was a valuable asset. In agreeing to accept Register's assistance, Kathleen refrained from taking RK's business—her client's business—to another agent. These allegations are sufficient to plead consideration in support of the contract. Margeson, 776 N.W.2d at 655–56. Plaintiffs sufficiently state a claim for breach of contract as to the sale of life insurance to RK.

**B. Unjust Enrichment (Count IV)**

In Count IV of the Complaint, Plaintiffs allege Defendants were unjustly enriched at Plaintiffs' expense. To recover under a theory of unjust enrichment, the plaintiff must establish: "(1) defendant was enriched by the receipt of a benefit; (2) the enrichment was at the expense of the plaintiff; and (3) it is unjust to allow the defendant to retain the benefit under the circumstances." State ex rel. Palmer v. Unisys Corp., 637 N.W.2d 142, 154–55 (Iowa 2001).

Defendants argue Count IV was properly dismissed because Plaintiffs do not plead circumstances that make it unjust for Register to retain the commissions he received for sales of annuities to Kathleen and life insurance products to RK. Defendants argue Register worked for the right to earn the commissions and, in contrast, Kathleen and Plaintiffs did nothing and therefore have no claim to any portion of the commissions. Because it is undisputed that an express contract exists between the parties as to the sale of annuities, the unjust enrichment claim directed towards the annuity must fail as a matter of law. Kunde v. Estate of Bowman, 920 N.W.2d 803, 807–08 (Iowa 2018); Scott v. Grinnell Mut. Reinsurance Co., 653 N.W.2d 556, 561 n.2 (Iowa 2002) (rejecting generally claims of implied contracts in the presence of express contracts). However, as to the sale of life insurance products to RK, the parties dispute the existence of an enforceable oral contract. A party is not barred from pleading unjust enrichment in the alternative to a breach of contract claim when the existence and terms of a contract are in dispute. See, e.g., Legg v. West Bank, 873 N.W.2d 763, 771–72 (Iowa 2016) ("Although we have held there may be a contract implied in law on a point not covered by an express contract, there can be no such implied contract on a point fully covered by an express contract and in direct conflict therewith." (quoting Smith v. Stowell, 125 N.W.2d 795, 800 (1964))); see also Union Pac. R.R. Co. v. Cedar Rapids & Iowa City Ry. Co., 477 F. Supp. 2d 980, 1001–03 (N.D. Iowa 2007) (applying Iowa law).

Plaintiffs have pleaded the basic elements and factual support for an unjust enrichment claim, namely, that Register accepted and retained a benefit to which he was not fully entitled. "The doctrine of unjust enrichment is based on the principle that a party should not be permitted to be unjustly enriched at the expense of another . . . . ." State ex rel. Palmer, 637 N.W.2d at 154. It "is a broad principle with few limitations." Id. at 155. Benefits need not "be conferred directly by the plaintiff[s]," instead, "[t]he critical inquiry is that the benefit received be at the expense of the plaintiff." Id. And, "whether it is unjust to profit at another's expense depends on the circumstances." CRST Expedited, Inc. v. TransAm Trucking, Inc., 960 F.3d 499, 509 (8th Cir. 2020) (applying Iowa law). Here, Register received the benefit of an undivided commission on the sale of products to RK. The commission collected by Register is alleged to be at least an indirect result of (1) Kathleen entrusting Register to split the commission, and (2) Kathleen refraining from interfering with Register's access to the override commission. By not listing Kathleen as producer on the sales, Register was able to retain a larger commission than he was otherwise going to receive. Accordingly, we conclude the district court erred in granting Register's motion to dismiss on Kathleen's unjust enrichment claim as related to the RK insurance sale.

## C. Breach of Fiduciary Duties (Count VI)

In Count VI of the complaint, Plaintiffs allege Register breached his fiduciary duties to Kathleen. To state a claim for breach of a fiduciary duty under Iowa law, the plaintiff must plead facts showing that "(1) [the defendant] owed a fiduciary duty to [the plaintiff]; (2) [the defendant] breached the fiduciary duty . . . ; (3) the breach of fiduciary duty was a proximate cause of damage to [the plaintiff]; and (4) the amount of damages, if any." Top of Iowa Co–op. v. Schewe, 149 F. Supp. 2d 709, 717 (N.D. Iowa 2001), aff'd, 324 F.3d 627 (8th Cir. 2003).

Defendants argue Count VI was properly dismissed because the facts, as alleged, do not give rise to a fiduciary relationship between Kathleen and Register. Under Iowa law, "[a] fiduciary relationship exists between two persons 'when one of them is under a duty to act for or to give advice for the benefit of another upon matters within the scope of the relation.'" Vos v. Farm Bureau Life Ins. Co., 667 N.W.2d 36, 52 (Iowa 2003) (quoting Kurth v. Van Horn, 380 N.W.2d 693, 695 (Iowa 1986)). Certain two-party relationships, such as those between attorney and client, "necessarily give rise to a fiduciary relationship." Kurth, 380 N.W.2d at 696. Generally, the relationship of business associates or between a business owner and a consultant does not automatically give rise to a fiduciary duty.

Even so, Iowa law recognizes that fiduciary, or confidential relationships, can "exist[] when one person has gained the confidence of another and purports to act or advise with the other's interest in mind." Wilson v. IBP, Inc., 558 N.W.2d 132, 138 (Iowa 1996) (quoting Hoffman v. National Med. Enters., Inc., 442 N.W.2d 123, 125 (Iowa 1989)). "The gist of the doctrine of confidential relationship is the presence of a dominant influence under which the act is presumed to have been done. [The] [p]urpose of the doctrine is to defeat and protect betrayals of trust and abuses of confidence." Id. (quoting Hoffman, 442 N.W.2d at 125). Fiduciary relationships may arise in a variety of scenarios, including those involving: "the acting of one person for another; the having and the exercising of influence over one person by another; the reposing of confidence by one person in another; the dominance of one person by another; the inequality of the parties; and the dependence of one person upon another." Kurth, 380 N.W.2d at 696 (citation omitted). No one factor is determinative. Rather, Iowa courts have repeatedly recognized that, "[b]ecause the circumstances giving rise to a fiduciary duty are so diverse, any such relationship must be evaluated on the facts and circumstances of each individual case." Id.; see also Vos, 667 N.W.2d at 52.

Here, Plaintiffs allege Register contacted Kathleen repeatedly, beginning at her husband's wake, to offer his expertise and counsel as she attempted to restructure her husband's business into her own. Register communicated his interest in helping Kathleen complete certain sales, specifically the sale of life insurance products to RK. The complaint alleges Register took on the role of advising Kathleen not only as to her personal financial decisions but also her business decisions. Register assured Kathleen that he would continue to honor the terms of certain producer appointments, seemingly to his own detriment, so that she could receive future commissions to fund her business. Kathleen alleges that, based on these assurances, she trusted Register enough to disclose her business plans to him, including her planned operation of several new entities and her efforts to complete the sale of policies to RK.

Based on these allegations, Kathleen placed her confidence in Register. But a plaintiff alone, by placing trust in a defendant, does not imbue a business relationship with fiduciary duty. See Union Cty. v. Piper Jaffray & Co., 741 F. Supp. 2d 1064, 1104–05 (S.D. Iowa 2010) (collecting cases). At a minimum, the defendant must be aware of the trust placed in him. See id.; cf. Irons v. Comm. State Bank, 461 N.W.2d 849, 852 (Iowa Ct. App. 1990) ("The Irons apparently feel because they reposed some trust in the bank, a fiduciary relationship was created. However, not only does the record fail to show a fiduciary relationship based on the facts, but also there is no evidence the bank ever assented to or was aware of a fiduciary relationship."). "[S]uch 'assent' or 'knowledge' is ordinarily demonstrated by proof that the reposing of confidence and trust on the one side *resulted* in dominance and influence on the other side." Id. at 1105.

The allegations depict Register as, in part, acting on his own behalf in procuring continued business. However, they also indicate Register was purporting to act on behalf of Kathleen in a confidential and influential relationship—one in which Register was allegedly aware of the confidence Kathleen placed in him. Kurth, 380 N.W.2d at 698 (rejecting a breach of fiduciary duty claim against a bank where

-12-

a plaintiff failed to show the bank was aware the plaintiff had relied on the bank for advice). Based on this confidence, Register was allegedly able to influence Kathleen's business decisions in ways far beyond an arm's length business relationship. First Nat'l Bank in Sioux City v. Curran, 206 N.W.2d 317, 324 (Iowa 1973) ("By virtue of the reposed confidence itself, the recipient of the transfer has influence he would not possess if the two individuals were at arm's length."). Such conduct, at least in the context of a motion to dismiss, plausibly supports an alleged fiduciary relationship. Therefore, we conclude Plaintiffs sufficiently stated a claim for breach of fiduciary duty.

## D. Fraud and Negligent Misrepresentation (Counts I and II)

To the extent Plaintiffs' claims of fraud or negligent misrepresentation relate to the sale of life insurance products to RK, we find the claims sufficient to survive the motion to dismiss. In order to prevail on a common law fraud claim the plaintiff must prove: "(1) [the] defendant made a representation to the plaintiff, (2) the representation was false, (3) the representation was material, (4) the defendant knew the representation was false, (5) the defendant intended to deceive the plaintiff, (6) the plaintiff acted in [justifiable] reliance on the truth of the representation . . . , (7) the representation was a proximate cause of [the] plaintiff's damages, and (8) the amount of damages." Spreitzer v. Hawkeye State Bank, 779 N.W.2d 726, 735 (Iowa 2009) (citation omitted). Defendants argue Plaintiffs failed to sufficiently plead justifiable reliance as to both claims. "[T]he justified standard followed in Iowa means the reliance does not necessarily need to conform to the standard of a reasonably prudent person, but depends on the qualities and characteristics of the particular plaintiff and the specific surrounding circumstances." Id. at 737. "Still, the individual to whom the fraudulent misrepresentation is made is 'required to use his senses, and cannot recover if he blindly relies on a misrepresentation the falsity of which would be patent to him if he had utilized his opportunity to make a cursory

-13-

examination or investigation.'" Dier v. Peters, 815 N.W.2d 1, 9 (Iowa 2012) (quoting Lockard v. Carson, 287 N.W.2d 871, 878 (Iowa 1980)).

Here, Plaintiffs allege that Register told Kathleen he was working in his capacity as business advisor and confidante to help complete the sale of life insurance products for Kathleen. Kathleen wanted to complete the sale to RK, a personal family friend. Plaintiffs allege that "Register represented to [Kathleen] that he would assist the Plaintiffs in completing the sale of the insurance to RK and would credit the sale to her, or one of her licensed agents, who would receive a Producer's appointment." Plaintiffs also allege that multiple members of their staff were licensed and could legally be appointed as producer for a sale. At the pleading stage, these allegations sufficiently allege justifiable reliance. Although it is true that Kathleen and her staff could have followed up with Register or RK to check on the status of the sale, it is also true that Kathleen alleges she was under extraordinary stress, Register knew this fact, and Register spoke in this context when telling her he was acting as her business advisor. On motions to dismiss, the Iowa Supreme Court has been "unwilling to hold as a matter of law that" reliance is not justified in specific circumstances. See Dier, 815 N.W.2d at 9 ("At the pleading stage, . . . we are unwilling to hold as a matter of law that a putative father can never rely on a mother's representation that he is the father and must immediately insist upon paternity testing."). Although Defendants argue reliance was clearly unjustified, the Iowa Supreme Court's approach appears to acknowledge the importance of permitting discovery and development of the record to assess the nuanced question of whether reliance is justified. At this stage, Plaintiffs plausibly allege justifiable reliance as required to support claims of fraud and negligent representation as to the RK sales.

### E. Other Claims

Plaintiffs also brought claims alleging fraudulent or intentional misrepresentation and negligent misrepresentation that did not relate to the sale of life

insurance products to RK (Counts I–II) and misappropriation of trade secrets (Count V).[4]   On our review of the pleadings, we agree with the district court that Plaintiffs failed to adequately state claims upon which relief can be granted.  Accordingly, we affirm the partial dismissal of Counts I–II and the dismissal of Count V.

## III.  Conclusion

We reverse the judgment of the district court as to Plaintiffs' breach of fiduciary duty claim and those portions of the breach of contract, unjust enrichment, and fraud or negligent misrepresentation claims relating to the sale of life insurance products to RK.  As to these claims, we remand for further proceedings consistent with this opinion.  As to all other claims, we affirm the judgment of the district court.[5]

_____

[4]We note, as a final matter, that Defendants raise several arguments under Iowa's insurance law, specifically sections of Chapter 522B, which govern the licensing of insurance producers.  Most of these arguments pertain to the legality of Kathleen receiving a commission for the sale of annuities to herself.  Because we agree with the district court's dismissal of Plaintiffs' annuity-related claims, we do not address these statutory arguments.  Defendants also argue that neither Kathleen nor any of her colleagues were sufficiently licensed to be able to receive commissions from either the sale to Kathleen or the sale to RK.  At this stage in the litigation, the Complaint sufficiently alleges licensing was in place.

[5]To the extent our opinion does not moot Plaintiffs' appeal of the district court's ruling denying their motion under Federal Rules of Civil Procedure 52(b) and 59(e), we affirm the district court's denial.