Joe Wayne HARRIS and Elena Harris *v.* STEPHENS PRODUCTION COMPANY, et al.

92-269                                   832 S.W.2d 837

Supreme Court of Arkansas
Opinion delivered June 29, 1992

*Ray Edwards* of *Edwards & Edwards; Charles "Chuck"*

*Dyer*; and *Batchelor & Batchelor*, by: *Fines F. Batchelor, Jr.*, for appellants.

*Daily, West, Core, Coffman & Canfield*, by: *Michael C. Carter* and *Janice West Whitt*, for appellee.

ROBERT H. DUDLEY, Justice. The plaintiffs, Joe and Elena Harris, filed this suit claiming a 100% working interest ownership of the oil, gas, and mineral rights in a 40-acre tract and the concomitant rights to the proceeds from a nearby commercially producing well that is located in the same drilling unit. The chancellor found the plaintiffs' claims to be without merit, and they appeal. The ruling of the chancellor was correct, and we affirm.

In 1961, Bert Tankersley leased his oil, gas, and mineral interest in 100 acres to Gulf Oil Corporation. The lease included the 40 acres at issue in the north half of section 8, plus 60 acres in section 9. Stephens Production Co., the defendant, and appellee, subsequently acquired the leasehold working interest of the 40-acre tract in section 8 and then pooled and unitized for drilling the north half of section 8 and the south half of section 5. Stephens owned 100% of the oil and gas leases in the 640-acre drilling unit. In 1970-71, Stephens drilled a gas well, the Harris-Chitwood No. 1, on the 40 acres in section 8. The well produced for six years, but ceased commercial production in 1977. When commercial production ceased, 70% of Stephens' leases in the unit lapsed due to non-production. Stephens held the remaining 30% by production since those leases contained acreage that was in other producing units. Earlier, in June 1968, Chevron had drilled the Chevron-Whitlock No. 1 Well in the section 9 drilling unit that contained the other 60 acres of the Tankersley lease. The Chevron-Whitlock No. 1 Well has produced in paying quantities since 1968 and so, unless otherwise terminated, Stephens holds the 40-acre tract by virtue of production on the 60 acres.

Plaintiffs, Joe and Elena Harris, through the years purchased four tracts of land, comprising about 500 acres, all located in the immediate area. One of the tracts, which was apparently purchased in 1974, is the 40-acre tract in section 8. The Harris-Chitwood No. 1 is located 2,000 feet north of plaintiffs' house.

After the Harris-Chitwood No. 1 ceased commercial pro-

duction, Stephens attempted without success to interest other production companies in drilling in the unit and, in 1980, decided to cap the well. When Stephens sent a crew to cap the well, plaintiff Joe Harris met them and asked them not to cap it, but instead to let the Harrises use the gas from the well for their home. A Stephens vice-president told Harris that he would have to get the approval of the Oil and Gas Commission. With the help of his attorney, Harris drafted a letter to the Commission asking it to allow him to assume the responsibility and the liability for the well and for the future expense of capping of it. The Commission responded by letter telling Harris what he would have to do in order to be allowed to use the well for his personal use. About a year later, Stephens wrote the Harrises and told them that it would cap the well if it did not hear from them in forty-five days. There was additional correspondence and then, in October of 1982, Stephens mailed to the Harrises a "Conveyance and Bill of Sale," with a copy to the Commission and to the plaintiffs' attorney. The Harrises paid nothing for the conveyance. In 1983, the commission gave the Harrises the right to use the well for household purposes.

In 1986, TXO Production Corp. became interested in drilling another well in the same unit in which the Harris-Chitwood No. 1 is located and, to that end, leased some of the Harrises' other property, but not the 40 acres at issue. TXO declined to take a lease from the plaintiffs on the 40 acres at issue because it concluded that was held by Stephens as a result of production. Stephens participated in the drilling of the well, the Wamock No. 1, which was successfully completed in December of 1986. The well is in commercial production, and Stephens has paid royalties to the plaintiffs since production began. Over two years after the completion of the Wamock No. 1, the plaintiffs filed this suit claiming a 100% working interest ownership in the 40-acre tract because of the 1982 "Conveyance and Bill of Sale." Stephens counters that the conveyance shows on its face that it conveyed only the *well*, while the plaintiffs contend that it conveyed the entire *unit*. The chancellor ruled that some of the language in the instrument was ambiguous and allowed parol evidence to determine the true intent of the parties. The plaintiffs assign this ruling as error. The nature of the case itself tends to show the correctness of the chancellor's ruling. The Harrises

contend that the instrument conveyed the gas leases in the unit, while Stephens contends that it conveyed only the well. The instrument provides:

> That in consideration of the sum on ONE DOLLAR ($1.00), the receipt of which is hereby acknowledged, and the further release of all liability and responsibility, STEPHENS PRODUCTION COMPANY does hereby SELL, DELIVER and TRANSFER unto JOE HARRIS, Route 1, Alma, Arkansas 72921, all of its interest in and to the physical equipment, Oil and Gas Leases, and all other property rights owned, used or held by it in connection with the Harris-Chitwood #1 Well located 850 feet East and 530 feet South of the Northwest corner of the Northwest Quarter of the Northeast Quarter (NW/4 NE/4) of Section 8, Township 9 North, Range 30 West, Crawford County, Arkansas. This conveyance is made without warranty of title, either express or implied, and is also without representation as to the quantity, quality or continued life of the subject well.

> Joe Harris, by the acceptance of this conveyance, hereby agrees and stipulates that the interest conveyed hereby shall not be transferred or conveyed, in whole or in part, to any other person or party and the gas, if any, produced from said well shall not be sold, bartered or conveyed to any other person or party, it being understood that the gas is for the personal, sole and exclusive use of Joe Harris on the premises adjacent to the wellhead.

> As a part of the consideration for this transfer, Joe Harris hereby stipulates and agrees that Stephens Production Company shall not be responsible for the plugging of said well nor shall it be liable for any claims or obligations in connection with the production of gas therefrom. Joe Harris agrees hereby to hold Stephens Production Company harmless from the claims of all persons whomsoever arising out of or in connection with the operation or production of gas from the Harris-Chitwood #1 Well and from any and all actions, causes of action, claims and demands for, upon, and by reason of any damage, loss or injury sustained by anyone in consequence of the further

operations of said well.

EXECUTED this *11th* day of *October*, 1982.

With the exception of one phrase, the instrument would not be ambiguous, and its purpose clearly would have been only to sell, deliver, and transfer to the plaintiffs the *well*. However, in the seventh line, the instrument contains the phrase "Oil and Gas Leases" and, arguably, the instrument could be construed to mean that it conveyed Stephens' oil and gas leases in the *unit*. Thus, it contained an ambiguity, and the chancellor allowed parol evidence to aid in the construction of the vague phrase. The chancellor's ruling was correct. In *Mays* v. *Barnett*, 150 Ark. 492, 496, 234 S.W. 488, 489 (1921), we quoted with approval from *Brown & Hackney* v. *Daubs*, 139 Ark. 53, 213 S.W. 4 (1919) as follows:

> Parol evidence to vary the terms of a written contract is one thing; such evidence to enable the court to say what the parties to a contract intended to express by the language adopted in making it is quite another thing. The former is not permissible. . . . The later is permissible, and is often absolutely essential to show the real nature of the agreement. . . . Both rules are elementary, and do not conflict in the slightest degree with each other. . . . *A failure to keep in mind the wide distinction between varying a contract by parol evidence and resorting to such evidence in aid of its construction often leads to error.* [Emphasis added.]

The attorney who drafted the instrument for Stephens testified that the purpose of the phrase was to give the plaintiffs the leasehold interest in the well itself, and the Harrises would then be responsible in the event other royalty owners in the unit asked for royalties on the gas used in the Harrises' house, or if the State assessed severance tax on the gas used by plaintiffs, or if there was a State conservation assessment on that production. The attorney testified that there was no intent to give the plaintiff all of the leases in the unit. Other correspondence between plaintiffs, Stephens, and the Commission, shows that, at the time of the instrument, the plaintiffs' understanding and intention was that they were to receive Stephens' ownership only in the Harris-Chitwood No. 1, subject to the conditions imposed in the

instrument. In sum, the chancellor correctly allowed parol evidence to aid in the construction of the vague phrase "Oil and Gas Leases."

■ The plaintiffs next argue that the trial court erred in remaking the instrument. We summarily reject the argument. The trial court did not remake or reform the instrument, rather it allowed parol evidence for the purpose of construing the instrument as written.

■ The plaintiffs' final two arguments are treated together. They argue that the trial court erred in failing to construe the instrument most strongly against the party that prepared it and that the decision is clearly erroneous. While an instrument is to be construed most strongly against the party that prepared it, the primary rule in the construction of instruments is that the court must, if possible, ascertain and give effect to the intention of the parties. *Sternberg* v. *Snow King Baking Powder Co., Inc.*, 186 Ark. 1161, 57 S.W.2d 1057 (1933). Even when this instrument is construed most strongly against the party that prepared it, the plaintiffs cannot prevail. Finally, the ruling of the chancellor, rather than being clearly erroneous, is eminently correct.

■ In their reply brief, plaintiffs argue that the chancellor erroneously concluded that Stephens held the lease to the 40 acres by production in the neighboring unit. We do not reach the merits of this argument, as it was not discussed in the plaintiffs' original brief, and points may not be argued only in reply. *Myers* v. *Muuss*, 281 Ark. 188, 662 S.W.2d 805 (1984).

Affirmed.

BROWN, J., not participating.