# United States Court of Appeals
## For the Eighth Circuit

_____

No. 15-3694

_____

Mark Neubauer, an individual in North Dakota; Marken, Inc., a North Dakota corporation

*Plaintiffs - Appellants*

v.

FedEx Corporation, a Delaware corporation; FedEx Ground Package System, Inc., a Delaware corporation; David F. Rebholz; Rodger G. Marticke; Clifford P. Johnson

*Defendants - Appellees*

_____

Appeal from United States District Court
for the District of North Dakota - Fargo

_____

Submitted: November 14, 2016
Filed: February 17, 2017

_____

Before COLLOTON, BEAM, and GRUENDER, Circuit Judges.

_____

GRUENDER, Circuit Judge.

Mark Neubauer and his corporate entity, Marken, Inc., allege that FedEx Corporation; FedEx Ground Package System, Inc.; David Rebholz; Rodger Marticke; and Clifford Johnson (collectively "FedEx") breached contractual duties, engaged in fraud, and violated North Dakota's Franchise Investment Law and Racketeer Influenced and Corrupt Organizations (RICO) Act. Because Neubauer failed to state

a claim upon which relief can be granted, we affirm the district court's[1] dismissal of his amended complaint.

## I. BACKGROUND

We proceed based on the facts as described in Neubauer's amended complaint. *See Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 846 (8th Cir. 2014) ("[A]n amended complaint supercedes an original complaint and renders the original complaint without legal effect." (quotation and citation omitted)). We also look to the Standard Operating Agreement ("SOA"), the Independent Service Provider ("ISP") Agreement, and two releases ("Releases")—all documents embraced by the pleadings or attached to the complaint as exhibits. *See Mattes v. ABC Plastics, Inc.*, 323 F.3d 695, 697 n.4 (8th Cir. 2003) ("[I]n considering a motion to dismiss, the district court may sometimes consider materials outside the pleadings, such as materials that are necessarily embraced by the pleadings and exhibits attached to the complaint."); *see also Gorog v. Best Buy Co.*, 760 F.3d 787, 790-92 (8th Cir. 2014) (finding the district court properly relied upon contracts attached to the defendant's motion to dismiss because the plaintiff's claim rested upon these contracts).

On April 5, 2004, Neubauer and FedEx entered into the SOA, whereby Neubauer would pick up and deliver FedEx packages in return for weekly payments based on stops made and packages handled. The SOA provided that it would be "governed by and construed in accordance with the laws of . . . Pennsylvania." It also stipulated that Neubauer "will provide these services strictly as an independent contractor, and not as [a FedEx] employee" and that "no officer or employee of FedEx Ground shall have the authority to impose any term or condition on Contractor or on Contractor's continued operation which is contrary to this understanding."

---

[1]The Honorable Ralph R. Erickson, United States District Judge for the District of North Dakota.

Furthermore, under the SOA, independent contractors like Neubauer held a "proprietary interest" in serving FedEx customers within a specific geographic area, known as a Primary Service Area ("PSA"). If a contractor no longer desired to provide services to FedEx during the term of the SOA, the contractor had "the right to assign his/her rights and obligations [under the SOA] to a replacement contractor." The Assignment Provision stated that FedEx had to approve the replacement contractor "as being qualified to provide [services]," but once it did, FedEx would "enter into a new agreement with Replacement Contractor on substantially the same terms and conditions" as those for the outgoing contractor. Regarding the agreement between an outgoing and replacement contractor, the Assignment Provision expressly noted that "[a]ny consideration to be paid by Replacement Contractor on account of such assignment shall be strictly a matter of agreement between Contractor . . . and Replacement Contractor." FedEx would not be party to that transaction and "[had] no other obligations whatsoever either to secure a Replacement Contractor for the benefit of Contractor, or to assure any payment to Contractor on account of Contractor's assignment."

In 2004, pursuant to the Assignment Provision, FedEx approved Neubauer as a replacement contractor, and Neubauer paid an outgoing contractor $75,000 to assume the outgoing contractor's rights to service its PSA. Neubauer then executed the SOA with FedEx and elected to have the initial term of the SOA last until 2007, with automatic renewals for successive one-year terms unless either party provided written notice of termination within thirty days prior to the expiration of the existing term. Over the next few years, Neubauer also negotiated assignments from two more contractors, paying them $182,542 for the right to service PSAs and $5,000 for a truck. On both occasions, FedEx approved of Neubauer as a replacement contractor.[2]

---

[2]During this time, Neubauer also transferred his rights to Marken, his corporate entity. Hereafter, we refer to the plaintiffs collectively as "Neubauer."

The SOA was renewed and remained in place until 2011. On or about March 17, 2011—more than thirty days before the April 29, 2011 expiration of the SOA—FedEx advised Neubauer and all North Dakota independent contractors that it was transitioning to a different business model and would not renew existing SOAs. Instead, contractors who desired to transition into FedEx's new business model could enter into the new ISP Agreement. The terms of the ISP Agreement diverged from the terms of the SOA. Most importantly, under the SOA, FedEx would enter into a new SOA for a full term with a replacement contractor, but the ISP Agreement only allowed a replacement contractor to provide services for the remaining term of the original ISP Agreement. Neubauer nonetheless agreed to transition to the new ISP model on November 5, 2011, claiming that he did so in order to "mitigate . . . damages and avoid the complete loss of [his] investment in FedEx Ground's business and customer accounts." FedEx paid Neubauer $10,000 to execute the Releases, whereby Neubauer agreed not to sue or demand arbitration from FedEx in regards to the transition from the SOA to the ISP Agreement.

The ISP governed FedEx and Neubauer's relationship until 2014, when FedEx terminated its relationship with Neubauer due to purported breaches of the ISP Agreement. Neubauer assigned his rights under the ISP Agreement to a replacement contractor, hoping FedEx would enter into a new agreement with his replacement contractor for a full term. However, he was only able to assign his rights for the remaining term of his ISP Agreement. After FedEx refused to reimburse him for alleged damages, Neubauer brought suit in North Dakota state court, which FedEx removed to federal court. Neubauer filed a 181-paragraph amended complaint with multiple causes of action: (1) breach of contract, (2) fraud, (3) constructive fraud, (4) fraudulent inducement, (5) violations of North Dakota's Franchise Investment Law, and (6) violations of North Dakota's RICO Act. FedEx moved to dismiss all the claims under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the district court granted the motion in full, and Neubauer now appeals.

## II. DISCUSSION

Neubauer contends that all of his causes of action should survive the motion to dismiss. "We review *de novo* the district court's grant of a motion to dismiss, accepting as true all factual allegations in the complaint and drawing all reasonable inferences in favor of the nonmoving party." *Richter v. Advance Auto Parts, Inc.*, 686 F.3d 847, 850 (8th Cir. 2012). To survive a motion to dismiss, an amended complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (citations and quotations omitted). Furthermore, "we will not mine a [lengthy] complaint searching for nuggets that might refute obvious pleading deficiencies." *Quintero Cmty. Ass'n Inc. v. F.D.I.C.*, 792 F.3d 1002, 1009 (8th Cir. 2015).

### A. Breach of Contract Claims

Pennsylvania law governs the construction of the SOA. Under Pennsylvania law, a plaintiff asserting breach of contract must allege "(1) the existence of a contract, including its essential terms[;] (2) a breach of a duty imposed by the contract[;] and (3) resultant damages." *Ware v. Rodale Press, Inc.*, 322 F.3d 218, 225 (3d Cir. 2003) (quotation omitted) (applying Pennsylvania law). "It is well established that . . . when the words [of a contract] are clear and unambiguous the intent is to be discovered only from the express language of the agreement." *Steuart v. McChesney*, 444 A.2d 659, 661 (Pa. 1982) (citation omitted). Additionally, Pennsylvania courts do not interpret contracts in a way that leads to absurd results. *Clairton Slag, Inc. v. Dep't of Gen. Servs.*, 2 A.3d 765, 773 (Pa. Commw. Ct. 2010) (citing *Stamerro v. Stamerro*, 889 A.2d 1251, 1259 (Pa. Super. 2005)). "Where, as

here, the claims relate to a written contract that is part of the record in the case, we consider the language of the contract when reviewing the sufficiency of the complaint." *M.M. Silta, Inc. v. Cleveland Cliffs, Inc.*, 616 F.3d 872, 876 (8th Cir. 2010). If an amended complaint's breach-of-contract claim conflicts with the plain language of the contract, the contractual language controls. *Gorog*, 760 F.3d at 793 (affirming dismissal of an amended complaint because the "breach-of-contract claim is foreclosed by the plain language of the [contract].").

The amended complaint claimed that FedEx breached the SOA in two ways. First, it alleged that FedEx's unwillingness to allow Neubauer to assign his rights to service PSAs under the SOA terms constituted a breach of the SOA. Second, it asserted that the non-renewal of the SOA and the ISP transition imposed new terms and conditions in violation of the Background Statement of the SOA. Both breach-of-contract claims were properly dismissed.

Dismissal was proper as to the first breach-of-contract claim because the SOA expired in 2011. Thus, in 2014, Neubauer's relationship with FedEx was governed by the ISP Agreement, and he was not entitled to assign his rights under the terms of the SOA. Neubauer responds by asserting that the assignment agreements—the contracts whereby he replaced existing contractors—also established valid and enforceable contracts with FedEx. He thus argues that even if the SOA expired in 2011, FedEx still breached the assignment agreements when it refused to allow him to assign his rights to service PSAs under the terms of the SOA. We disagree. The SOA's plain text proves fatal to Neubauer's allegations, as it explicitly notes that FedEx was not a party to any of the assignment agreements: "Any consideration to be paid by Replacement Contractor on account of such assignment shall be strictly a matter of agreement between Contractor . . . and Replacement Contractor." FedEx "[had] no other obligations whatsoever . . . to assure any payment to Contractor on account of Contractor's assignment." Thus, the first "breach-of-contract claim is foreclosed by the plain language of the [SOA]." *See Gorog*, 760 F.3d at 793.

Neubauer's second breach-of-contract claim was also properly dismissed. Neubauer's amended complaint alleged that FedEx's non-renewal of the SOA and the ISP transition violated the Background Statement of the SOA, which Neubauer argues forbade FedEx from altering the SOA in any way. While the Background Statement reads, "[N]o officer or employee of FedEx Ground shall have the authority to impose any term or condition on Contractor," Neubauer's reading ignores the context surrounding that phrase and would lead to an absurd result. In full, the Background Statement reads:

> *Both FedEx Ground and Contractor intend that Contractor will provide these services strictly as an independent contractor, and not as an employee of FedEx Ground for any purpose.* Therefore, this Agreement will set forth the mutual business objectives of the two parties intended to be served by this Agreement—which are the results the Contractor agrees to seek to achieve—but the manner and means of reaching these results are within the discretion of the Contractor, and no officer or employee of FedEx Ground shall have the authority to impose any term or condition on Contractor or on Contractor's continued operation which is contrary to *this understanding.*

(emphasis added). In context then, the language that Neubauer latches onto—"no officer . . . of FedEx . . . shall have the authority to impose any term or condition"—simply means that FedEx could not impose new terms to alter the "understanding" that Neubauer "provide[d] these services strictly as an independent contractor, and not as an employee of FedEx." Neubauer's interpretation would seize one clause, rip it from its context, and apply it to the entirety of the SOA. The Background Statement's language and structure does not lend itself to such linguistic acrobatics.

Indeed, Neubauer's reading of the Background Statement cannot be correct because it would lead to an absurd result. *See Gorog*, 760 F.3d at 794. Neubauer's construction would effectively forbid any modification of the SOA in perpetuity, even

if the SOA expired and the parties agreed to a new contract with different terms. Not only that, his interpretation would vitiate other terms of the SOA that allow non-renewal as long as notice is given thirty days prior to the expiration of the term. We thus find the district court did not err in dismissing the breach-of-contract claims.

## B. Fraud Claims

Neubauer's amended complaint also contained various fraud allegations. In effect, the amended complaint claimed that FedEx made knowing misrepresentations to fraudulently induce Neubauer to enter into the SOA and the ISP Agreement and execute the Releases. As these claims involve fraud, Rule 9(b) of the Federal Rules of Civil Procedure requires Neubauer to "state with particularity the circumstances constituting fraud." In other words, "the complaint must plead such facts as the time, place, and content of the defendant's false representations, as well as the details of the defendant's fraudulent acts, including when the acts occurred, who engaged in them, and what was obtained as a result." *U.S. ex rel. Joshi v. St. Luke's Hosp., Inc.*, 441 F.3d 552, 556 (8th Cir. 2006).

All of Neubauer's fraud claims were properly dismissed because he failed to plead fraud with the specificity required by Rule 9(b). Neubauer's amended complaint is replete with general statements and conclusory allegations. For example, the amended complaint alleged that when entering into the SOA, Neubauer relied on "vague and misleading" statements with respect to how much control FedEx would exercise over contractors. However, the amended complaint never detailed the content of these statements. Elsewhere, the amended complaint asserted that FedEx made "knowing misrepresentations and omissions of material fact" to induce Neubauer to "purchase PSAs" and "deceive[d]" Neubauer into signing the Releases and the ISP Agreement. These broad claims are just the type of "shotgun-style allegations" we have dismissed for failure to plead with specificity. *See Quintero*, 792 F.3d at 1010-11. Therefore, because Neubauer's amended complaint does not

come close to pleading the "'who, what, where, when, and how' of the alleged fraud," *see Joshi*, 441 F.3d at 556 (citation omitted), we affirm the district court's dismissal of Neubauer's fraud claims.

## C. North Dakota Franchise Investment Law Claim

Neubauer's amended complaint next alleged that FedEx offered and sold him an unregistered franchise in violation of North Dakota's Franchise Investment Law. For this claim to survive, Neubauer had to plead, amongst other things, sufficient facts to plausibly allege that he was a franchisee, meaning: (1) he was "granted the right to engage in the business of offering, selling, or distributing goods or services under a marketing plan or system prescribed in substantial part by a franchisor"; (2) "[t]he operation of [his] business pursuant to such [a] plan . . . [was] substantially associated with [FedEx's] trademark, service mark, trade name, logotype, advertising, or other commercial symbol designating the franchisor or its affiliate"; and (3) he was "required to pay, directly or indirectly, a franchise fee." *See* N.D.C.C. § 51-19-02(5)(a). This claim was properly dismissed because Neubauer failed to plead sufficient facts to plausibly state that he was granted the right to engage in the business of offering, selling, or distributing services under a FedEx marketing plan.

FedEx's business is package delivery, which it markets and sells directly to customers. Neubauer delivered and picked up FedEx packages, but his amended complaint did not allege facts that he had the right to offer, sell, or distribute his services to individual customers. *See, e.g.*, *Roberts v. C.R. England, Inc.*, 848 F. Supp. 2d 1087, 1089-90 (N.D. Cal. 2012) (applying a California franchise-investment statute with language nearly identical to North Dakota's Franchise Investment Law and concluding that plaintiffs who contracted to deliver packages failed to allege a franchise because they were not granted a right to offer or distribute services or goods to customers). In fact, we note that the SOA—the basis of this claim—explicitly stated that Neubauer was an independent contractor providing transportation services

to FedEx and that Neubauer received his payments not from customers, but from FedEx through a weekly settlement check. Thus, the amended complaint failed to plausibly claim that Neubauer was granted the right to offer or distribute services to customers. As a result, we affirm the district court's dismissal of this claim.

## D. North Dakota RICO Claim

Neubauer's final claim alleged that FedEx's purported violations of North Dakota's Franchise Investment Law, fraudulent activity, and acts of felony theft established a cause of action under North Dakota's RICO Act. North Dakota's RICO Act creates a civil right of action for "a person who sustains injury to person, business, or property by a pattern of racketeering activity." N.D.C.C. § 12.1-06.1-05. "A pattern of racketeering" is at least two acts of racketeering activity—or acts "committed for financial gain, which [are] chargeable or indictable under the laws of the state in which the act[s] occurred." *McColl Farms, LLC v. Pflaum*, 837 N.W.2d 359, 369 (N.D. 2013). Furthermore, "[a]n element of criminal activity is necessary to every racketeering claim[,] [p]roof of two related predicate criminal acts is required[,] [and] [i]t is necessary that either a prior conviction or probable cause be alleged with reference to the predicate acts." *Id.* (citations omitted). "[T]he acts alleged must be criminal acts and stating an act is criminal is not enough to make it true." *Id.* Finally, "[a] RICO claim must be pleaded with particularity under Rule 9(b)." *Crest Const. II, Inc. v. Doe*, 660 F.3d 346, 353 (8th Cir. 2011); *see also Rolin Mfg., Inc. v. Mosbrucker*, 544 N.W.2d 132, 138 (N.D. 1996) ("A RICO claim must be pled with the same particularity that is required in the pleading of fraud." (quotation omitted)).

Neubauer's RICO claim was properly dismissed because as we previously concluded, Neubauer failed to sufficiently plead facts for his fraud claims and Franchise Investment Law claim. Thus, the amended complaint did not plead facts sufficient to allege two acts of racketeering activity and fell short of stating a RICO

claim that was plausible on its face.  We therefore affirm the dismissal of the North Dakota RICO claim.

## III. CONCLUSION

For the foregoing reasons, we affirm the district court's dismissal of Neubauer's amended complaint.

_____