# United States Court of Appeals
### For the Eighth Circuit

_____

No. 16-1793

_____

Richard A. Torti, Sr., As Successor Trustee of the Stuart Family 1997 Trusts

*Plaintiff - Appellant*

v.

Debra Hoag; Gentry Partners Limited

*Defendant*s

John Hancock Life Insurance Company, USA

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Little Rock

_____

Submitted: January 12, 2017
Filed: August 17, 2017

_____

Before COLLOTON, GRUENDER, and KELLY, Circuit Judges.

_____

KELLY, Circuit Judge.

Richard A. Torti, as Trustee of the Stuart Family Trusts, brought a lawsuit against Debra Hoag, Gentry Partners Limited (Gentry) and the John Hancock Life Insurance Company, USA (Hancock), alleging claims of breach of fiduciary duty,

breach of contract, and negligence.[1]  After Torti settled with Hoag and Gentry, Hancock moved pursuant to Federal Rule of Civil Procedure 12(b)(6) for dismissal of the breach of contract and negligence claims remaining against it.  The district court[2] granted Hancock's motion, dismissing Torti's second amended complaint (SAC) with prejudice.  Because we agree that Torti failed to plead sufficient facts to state a plausible claim for breach of contract or negligence, we affirm.[3]

## I.  Background

This is an appeal from the district court's grant of a motion to dismiss, so we draw the relevant facts from Torti's SAC.  See Neubauer v. FedEx Corp., 849 F.3d 400, 403 (8th Cir. 2017).  We also consider the exhibits attached to the SAC, including the trust agreement and the Hancock insurance policy.  See id.  On August 8, 1997, Layton P. Stuart, as trustor, established the Stuart Family 1997 Trusts (the Trusts) by a written trust agreement.  At the time, Stuart was Chief Executive Officer of One Bank & Trust (One Bank) in Little Rock, Arkansas.  Pursuant to the trust agreement, Michael Heald, the Chief Operating Officer (COO) of One Bank, was appointed trustee.  The trust agreement granted Heald certain powers of administration, including the authority "to apply for and to own policies of insurance on the life of the trustor."

---

[1]Hancock is an insurance company with its principal place of business in Boston, Massachusetts.  Hoag is a citizen of Illinois and, and at all relevant times, was the president of Gentry, a foreign corporation with its principal place of business in Chicago, Illinois.

[2]The Honorable J. Leon Holmes, United States District Judge for the Eastern District of Arkansas.

[3]We have jurisdiction under 28 U.S.C. § 1291.

-2-

Heald, as trustee, applied for a $20 million variable life insurance policy on Stuart's life, which was issued by Hancock on August 12, 1997. As relevant here, Paragraph 11 of the policy gave the trustee authority to apply for loans against the cash value of the policy "on receipt at [the Hancock] Home Office of a completed form satisfactory to [Hancock] assigning the policy as the only security for the loan." Paragraph 24 of the policy allowed the policy to be assigned without the consent of any revocable beneficiary but stated that Hancock would not be on notice of any assignment unless it was provided notice "in writing" and "a duplicate of the original assignment has been filed at [the Hancock] Home Office." Paragraph 28 of the policy stated in relevant part:

> The written application for the policy is attached at issue. The entire contract between the applicant and [John Hancock] consists of the policy and such application. However, additional written applications for policy changes . . . may be submitted to [Hancock] after issue and such additional applications may become part of the policy. . . . Other changes in this policy may be made by agreement between [the Trusts] and [Hancock]. Only the President, Vice President, the Secretary, or an Assistant Secretary of the Company has authority to waive or agree to change in any respect any of the conditions or provisions of the policy, or to extend credit or to make an agreement for [Hancock].

Hoag, an insurance broker acting as Hancock's agent, facilitated the Trusts' purchase of the policy. The confirmation page of the policy named the "Stuart Family Trust, Mike Heald, Trustee" as the owner of the policy with an address of 300 W. Capitol Avenue, Little Rock, Arkansas, 72201. The premium for the policy was $350,000 per year for ten years.

To finance the premiums, Heald, on behalf of the Trusts, entered into a split-dollar agreement with One Bank, effective August 12, 1997. One Bank agreed to pay the annual premiums for the life insurance policy, to be reimbursed upon Layton Stuart's death out of the insurance proceeds. As consideration for the payment of

premiums, the Trusts assigned the Hancock policy to One Bank. Paragraph 6 of the split-dollar agreement prohibited the trustee from "transfer[ing], assign[ing], encumber[ing] or terminat[ing] the Insurance Policy . . . [d]uring the term of this Agreement," including by applying for loans against the cash value of the policy, which was to "remain available (subject to provisions of the Insurance Policy) to satisfy the amount payable to [One Bank]." The split-dollar agreement was signed by Heald on behalf of both parties—as COO of One Bank and as trustee of the Trusts. In an August 15, 1997, letter to Heald, Hoag acknowledged that the premium for the policy would be funded via the split-dollar agreement.

Nearly fourteen years later, on June 2, 2011, Heald retired as trustee and appointed Hoag as successor trustee. On June 3, 2011, Hoag requested a loan against the full cash value of the policy on a Hancock "Request for Policy Loan" form, using the Hancock insurance policy as collateral. The request form identified Hoag as the trustee and the Trusts as the owner of the policy with an address of 300 W. Capitol Avenue, Little Rock, Arkansas, 72201. Though the request form provided signature lines for assignees of the insurance policy (here, One Bank), the form was signed only by Hoag, as trustee, on behalf of the Trusts.

On June 7, 2011, Hancock issued a check in the amount of $1,761,000.00 payable to the "Stuart Family Trusts." The check was sent by FedEx to 300 W. Capitol Avenue, Little Rock, Arkansas, 72201. Hancock allowed the check to be paid after it was endorsed by Layton Stuart, who used the proceeds for non-trust related purposes.

Hoag resigned as trustee on October 25, 2012, and appointed Torti as successor trustee. Stuart died on March 24, 2013. In May 2013, Hoag notified Torti that before Hancock would pay the insurance proceeds, Torti would have to sign a release, releasing Hancock from any "demands, claims and causes of action . . . relating to or arising out of the Policy or the payment of any benefits thereunder." Torti refused

and Hancock transferred the net death benefits owing under the policy—a sum of $17,693,837.10—to a segregated account. On June 17, 2013, the United States Attorney notified the Trusts that the net death benefit proceeds had been seized.

On June 2, 2014, Torti filed suit against Hoag, Gentry, and Hancock. After the complaint was amended, Torti's claims against Hancock were dismissed without prejudice on October 17, 2014. Hancock was brought back into the lawsuit over a year later, on December 9, 2015, when Torti filed the SAC. Attached to the SAC were 13 exhibits, including the split-dollar agreement, the Hancock insurance policy, and "forms utilized by Hancock . . . in administering the Policy," which the SAC alleged "form[ed] a part of the contract of insurance." These forms were identified as Exhibits E-1 (instructions for completing a request for a policy loan); E-2 (a blank request for policy loan form); and E-3 (a checklist to be filled out by a Hancock employee upon receipt of a loan request) (collectively, "loan forms"). The SAC alleged breach of contract and negligence against Hancock. The district court granted Hancock's motion to dismiss, and this appeal follows.

## II. Discussion

We review the district court's grant of a motion to dismiss de novo, "accepting as true all factual allegations in the complaint and drawing all reasonable inferences in favor of the nonmoving party." Neubauer, 849 F.3d at 404 (quotation omitted). "To survive a motion to dismiss for failure to state a claim, the complaint must show the plaintiff 'is entitled to relief,' . . . by alleging 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" In re Pre-Filled Propane Tank Antitrust Litig., 860 F.3d 1059, 1063 (8th Cir. 2017) (en banc) (quoting Fed. R. Civ. P. 8(a)(2) and Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). To avoid dismissal, "[a] plausible claim must plead 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Id. (quoting Iqbal, 556 U.S. at 678). But a complaint must allege "more

-5-

than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). Courts "are not bound to accept as true a legal conclusion couched as a factual allegation," and "[f]actual allegations must be enough to raise a right to relief above the speculative level." Id. (internal quotation omitted).

## A. Breach of contract claim

Torti alleges the district court erred in holding that the SAC failed to state a claim for breach of contract against Hancock. Because our jurisdiction is based on diversity of citizenship, we apply federal procedural rules but Arkansas substantive law. See Ashley Cty. v. Pfizer, Inc., 552 F.3d 659, 665 (8th Cir. 2009). Our review of the district court's interpretation of Arkansas law is de novo. Hortica-Florists' Mut. Ins. v. Pittman Nursery Corp., 729 F.3d 846, 852 (8th Cir. 2013).

In Arkansas, "[i]nsurance policies are to be interpreted like other contracts." Agric. Ins. v. Ark. Power & Light Co., 361 S.W.2d 6, 12 (Ark. 1962). "In order to state a cause of action for breach of contract, the complaint need only assert the existence of a valid and enforceable contract between the plaintiff and the defendant, the obligation of defendant thereunder, a violation by the defendant, and damages resulting to plaintiff from the breach." Farris v. Conger, 512 S.W.3d 631, 634 (Ark. 2017). When interpreting a contract, courts "must, if possible, ascertain and give effect to the intention of the parties." Harris v. Stephens Prod. Co., 832 S.W.2d 837, 840 (Ark. 1992). This is done by looking "to the contract as a whole and the circumstances surrounding its execution." First Nat'l Bank of Crossett v. Griffin, 832 S.W.2d 816, 820 (Ark. 1992). Arkansas courts "consider the sense and meaning of the words used by the parties as they are taken and understood in their plain, ordinary meaning." Id. at 819 (quoting Farm Bureau Mut. Ins. v. Milburn, 601 S.W.2d 841, 842 (Ark. 1980)). Finally, courts read different clauses of the contract together, construing it "so that all of its parts harmonize, if that is at all possible." Id. (quoting

Cont'l Cas. Co. v. Davidson, 463 S.W.2d 652, 655 (Ark. 1971)). "A construction that neutralizes any provision of a contract should never be adopted, if the contract can be construed to give effect to all provisions." Tyson Foods, Inc. v. Archer, 147 S.W.3d 681, 686 (Ark. 2004).

Torti asserts that, in concluding that the loan forms were not part of the insurance policy between Hancock and the Trusts, the district court failed to read the policy as a whole. The court relied primarily on two sentences from Section 28: "The written application for the policy is attached at issue. The entire contract between the applicant and [Hancock] consists of the policy and such application." Torti claims this reliance was in error because Section 28 expressly contemplates that "additional written applications for policy changes . . . may be submitted to [Hancock] after issue and such additional applications may become part of the policy." In addition, Torti asserts, Section 11 of the policy specifically references the loan forms by allowing the trustee to borrow money on the cash value of the policy upon submitting "a completed form satisfactory to [Hancock]." Had the district court read the contract in its entirety, Torti alleges, it would have concluded the loan forms are "additional written application[s] for policy changes" because "the loan request was in writing; the loan request was an application for a loan against the policy; and the loan technically changed the terms of the policy."

Arkansas courts recognize that "[w]hen a contract refers to another writing and makes the terms of that writing a part of the contract, the two documents become a single agreement between the parties and must be construed together." Dye v. Diamante, 510 S.W.3d 759, 765 (Ark. 2017) (alteration in original) (quoting Ingersoll-Rand Co. v. El Dorado Chem. Co., 283 S.W.3d 191, 196 (Ark. 2008)). In order for a separate writing to become part of the contract, however, Arkansas courts require that the reference in the contract to the other writing "be clear and unequivocal, and the terms of the incorporated document . . . be known or easily available to the contracting parties." Ingersoll-Rand, 283 S.W.3d at 196 (quotation

omitted). "The document to be incorporated must be described in such terms that its identity may be ascertained beyond reasonable doubt," and "it must be clear that the parties to the agreement had knowledge of and assented to the incorporated terms." Id. (internal quotations omitted).

We agree with the district court that the language of the policy is unambiguous in describing what the parties intended their contract to be—the policy itself and the written application for the policy. Not only does Section 28 clearly identify the written application as part of the policy, but the written application is attached to the policy. In contrast, Section 11 does not specifically reference any of the loan forms, and the loan forms are not attached to the policy. Though Torti is correct that Section 28 of the policy contemplates that other documents may become part of the policy, it also requires that any changes to the policy be approved by specified Hancock officers. The SAC does not allege that any Hancock officer approved the loan forms as changes to the policy. Other than asserting that the loan forms are part of the insurance policy, the SAC fails to allege any facts that allow an inference that the parties clearly and unequivocally intended the loan forms to become part of their contract.[4] Though "[c]ourts must accept a plaintiff's factual allegations as true[,] [they] need not accept a plaintiff's legal conclusions." Retro Television Network, Inc. v. Luken Commc'ns, LLC, 696 F.3d 766, 768–69 (8th Cir. 2012).

In the district court, Torti offered an alternative argument: that Hancock was on notice that the policy had previously been assigned to One Bank, and it breached its obligation to act in good faith by making a loan it knew violated the split-dollar agreement. The district court concluded that Hancock was not on notice of the

[4]Torti urges us to find that the policy is at least ambiguous as to whether the parties intended the loan forms to become part of the contract. But in order for a separate writing to become part of a contract, Arkansas courts require the reference in the contract to the other writing "be clear and unequivocal," not ambiguous. Ingersoll-Rand, 283 S.W.3d at 196 (quotation omitted).

collateral assignment because Section 24 of the insurance policy expressly provided Hancock would not be "on notice of any assignment unless it is in writing, nor will we be on notice until a duplicate of the original assignment has been filed in our Home Office." The district court found that the SAC did not allege that either condition was satisfied.

Torti does not dispute this finding on appeal, but instead asserts the SAC sufficiently alleges that Hancock had *actual* notice of the split-dollar agreement. Even if Torti could circumvent the terms of the policy by asserting Hancock had actual knowledge (as compared to notice under the policy), the breach of contract claim still fails. The claim is premised on the assumption that the loan forms are part of the contract: Torti alleges that because Hancock had actual knowledge of the split-dollar agreement, it acted in breach of its duty to administer the insurance policy "in a prudent manner consist [sic] with its forms and procedures," *i.e.*, the loan forms, which Torti says "expressly provide what is required for a loan request form to be considered . . . 'satisfactory.'" Because the loan forms are not part of the insurance policy, this argument cannot resuscitate the breach of contract claim.[5]

## B. Negligence claim

Torti contends the district court also erred in dismissing his negligence claim against Hancock. "Under Arkansas law, in order to prevail on a claim of negligence, the plaintiff must prove that the defendant owed a duty to the plaintiff, that the defendant breached that duty, and that the breach was the proximate cause of the

---

[5]Torti also argues that the SAC alleges sufficient facts to reasonably infer that Hancock either intended to waive strict compliance with Section 24 of the policy or should be estopped from asserting failure of strict compliance. Because Torti did not plead waiver or estoppel in his SAC and did not argue it in district court, we do not consider this argument on appeal. See Kruger v. Neb., 820 F.3d 295, 306 (8th Cir. 2016).

plaintiff's injuries." Yanmar Co. v. Slater, 386 S.W.3d 439, 449 (Ark. 2012). "The question of the duty owed to the plaintiff alleging negligence is always one of law." Arloe Designs, LLC v. Ark. Capital Corp., 431 S.W.3d 277, 281 (Ark. 2014).

The district court dismissed Torti's negligence claim in part because it found that Hancock did not have a duty to ensure that the loan proceeds reached the correct recipient.[6] On appeal, Torti argues the district court misconstrued the allegations in the SAC. Torti claims Hancock had a duty to abide by its own policies and guidelines in processing and approving Hoag's loan request. According to Torti, "the issue is the manner and speed in which Hancock processed and approved the loan, and issued the loan check." Had Hancock followed its own procedures, Torti contends, it would have realized that Hoag was requesting an improper loan and that her conduct would likely result in damages to the Trust.

Arkansas courts recognize that "[a] duty of care may arise out of a contractual relationship between two parties." See Tackett v. Merchant's Sec. Patrol, 44 S.W.3d 349, 353 (Ark. Ct. App. 2001). But like Torti's breach of contract claim, his negligence claim relies on the loan forms—forms that contain Hancock's alleged policies, procedures, and guidelines—being part of the insurance contract. As we have determined, the loan forms were not part of the insurance contract entered into by the parties. Accordingly, we agree with the district court that Torti's SAC fails to state a claim against Hancock for negligent performance of the contract.[7]

_____

[6]The court also concluded that, to the extent the SAC alleged Hancock breached an implied duty of good faith and fair dealing, Arkansas law does not recognize a separate claim in tort for breach of that duty. See Mountain Home Flight Serv., Inc. v. Baxter Cty., 758 F.3d 1038, 1043 (8th Cir. 2014). We do not understand Torti to be challenging this holding.

[7]Torti alleges that the SAC states a claim against Hancock for aiding and abetting a tort and a negligence claim based on the allegedly actionable conduct of Gentry. Because the SAC does not allege these claims and Torti makes this argument

## III. Conclusion

For the foregoing reasons, we affirm the district court's dismissal of Torti's second amended complaint.

_____

---

for the first time on appeal, we will not consider these issues.  See <u>Kruger</u>, 820 F.3d at 306.