UNITED STATES DISTRICT COURT 
 EASTERN DISTRICT OF MISSOURI 
 EASTERN DIVISION 

KEVIN COVINGTON, ) 
 ) 
 Plaintiff, ) 
 ) 
 vs. ) Case No. 4:18-CV-01667-AGF 
 ) 
CARLINA STUCKEY-PARCHMON, ) 
et al., ) 
 ) 
 Defendants. 

 MEMORANDUM AND ORDER 
This matter comes before the Court on Defendant St. Louis County’s (“County”) 
motion (ECF No. 38) to dismiss Plaintiff Kevin Covington’s amended complaint, 
pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, the 
Court will grant the motion in part and deny it in part. 
 BACKGROUND 
Taken as true for the purpose of this motion, the facts alleged in the amended 
complaint are as follows. Plaintiff has been held as a pretrial detainee at the County jail 
from March 2017 to the present. Throughout this time, he has suffered from epilepsy and 
hypertension and has therefore been prescribed the following daily medications: Dilantin, 
Phenobarbital, and Verapamil. On five occasions between May 10 and September 16, 
2018, Defendant Carlina Stuckey-Parchmon, a nurse at the jail, refused to give Plaintiff 
his medications. 
Specifically, on or about May 10, 2018, Stuckey-Parchmon refused to give 
Plaintiff his medications, stating that Plaintiff “would have to get his medications from 
someone else.” ECF No. 33 at ¶ 12. Both Plaintiff and the housing unit officer at the 

time, Officer Robeinson,1 asked Stuckey-Parchmon the reason for her refusal, but 
Stuckey-Parchmon did not respond. Robeinson therefore contacted a supervisor, and 
seven hours later, another nurse brought Plaintiff his medications. 
On June 6, 2018, Stuckey-Parchmon again refused to give Plaintiff medications 
even though Stuckey-Parchmon was regularly dispensing medications to all other inmates 

in the unit. Stuckey-Parchmon told Plaintiff and the housing unit manager at the time, 
Officer Hayden, that she “did not have to give [Plaintiff] shit,” and did not “have to give 
a reason why.” Id. ¶ 18. Hayden then informed a supervisor, Lieutenant Beard, who 
asked Stuckey-Parchmon the reason for her refusal. Stuckey-Parchmon informed Beard 
that she had no reason but that she just would not serve Plaintiff.2 

Following these incidents, on September 14, 15, and 16, 2018, Stuckey-Parchmon 
again refused to give Plaintiff his medications.3 On September 14, Plaintiff was not 
wearing his identification wristband, and Stuckey-Parchmon asked a unit officer to 

1 The complaint does not indicate Robeinson’s first name or the first name of other 
officers described herein. 

2 The complaint does not indicate whether Plaintiff received his medications after 
the incident on June 6, 2018; however, Plaintiff’s grievance regarding this incident, 
which was attached to his complaint, reflects that Plaintiff was given his medication 12 
hours later. ECF No. 1 at Ex. 1. 

3 Neither the complaint nor the attached grievances indicates whether Plaintiff 
ultimately received his medications on September 14, and 16, 2018. 
retrieve Plaintiff’s booking card to identify Plaintiff. When Plaintiff asked why Stuckey-
Parchmon needed to see his booking card when she already knew who he was, Stuckey-
Parchmon threw Plaintiff’s medications into the trash and left the unit. The following 

day, when Plaintiff asked for his medications, Stuckey-Parchmon told Plaintiff to “get 
away from [her]” and called the next inmate in line for medications. Id. ¶ 25. The 
housing unit officer at the time, Officer Coticchio, instructed Plaintiff to file a grievance 
and told Plaintiff that he (Coticchio) would “call medical to send someone [else] up to 
give [Plaintiff] his meds.” Id. ¶ 26. The next day, Stuckey-Parchmon again refused to 

give Plaintiff his medications, telling Plaintiff to step out of line. Coticchio then told 
Plaintiff: “You know what you have to do. You file your grievance and I’ll file my 
report.” Id. 
Plaintiff alleges that as a result of failure to timely receive his regular medications, 
he suffered headaches and loss of sleep, dangerously high blood pressure, and unhealthy 

blood sugar levels; and he had to increase his dosage of one or more medications due to 
the irregular administration. 
Following each of these incidents, Plaintiff filed a grievance on the day-of and did 
not receive any response, notwithstanding that the County Department of Justice 
Services’ Inmate Handbook requires the County to respond to grievances within five 

days. On September 19, 2018, Plaintiff filed a sixth grievance, complaining that none of 
his prior grievances had been addressed. Again, Plaintiff did not receive a timely 
response. He therefore filed a complaint in this Court, pro se, on October 1, 2018. Only 
after filing this lawsuit did Plaintiff receive a response from the County to his grievance, 
in the form of a Formal Inmate Grievance Response Form with the purported date of 
September 22, 2018, responding to Plaintiff’s September 19, 2018 grievance. 
On April 22, 2019, the Court granted Plaintiff’s motion to appoint counsel, and 

appointed counsel thereafter sought leave to amend Plaintiff’s complaint. On May 31, 
2019, the Court granted Plaintiff’s motion for leave to amend in part, permitting Plaintiff 
to add factual allegations against Stuckey-Parchmon and to add municipal liability claims 
against the County.4 ECF No. 32. 
Plaintiff’s amended complaint contains two counts brought pursuant to 42 U.S.C. 

§ 1983. Count I, asserted against Stuckey-Parchmon in her individual capacity and 
against the County, alleges a violation of Plaintiff’s Eighth Amendment rights based on 
Stuckey-Parchmon’s refusal to dispense Plaintiff’s medication. Count II, asserted against 
the County only, alleges a violation of Plaintiff’s Fourteenth Amendment rights based on 
the County’s lack of, or disregard of, a grievance process. Plaintiff seeks compensatory 

and punitive damages. 
 The County now moves to dismiss both claims against it for failure to state a 
claim. The County argues that Count I fails to plausibly allege an underlying 
constitutional violation or municipal liability under Monell v. Department of Social 
Services of City of New York, 436 U.S. 658 (1978). As to Count II, the County argues 

that there is no constitutional right to a prison grievance procedure. 

4 The Court denied leave to add a claim against the County’s Justice Services 
Department, which is not a suable entity, and to add a redundant claim against a County 
official, Julia Childery, in her official capacity. ECF No. 32. 
 DISCUSSION 
To survive a motion to dismiss, a plaintiff’s claims must contain sufficient factual 
matter, accepted as true, to “state a claim to relief that is plausible on its face.” Bell Atl. 

Corp. v. Twombly, 550 U.S. 544, 570 (2007). The reviewing court accepts the plaintiff’s 
factual allegations as true and draws all reasonable inferences in favor of the nonmoving 
party. Torti v. Hoag, 868 F.3d 666, 671 (8th Cir. 2017). But “[c]ourts are not bound to 
accept as true a legal conclusion couched as a factual allegation, and factual allegations 
must be enough to raise a right to relief above the speculative level.” Id. 

Deliberate Indifference to Medical Needs (Count I) 
For § 1983 liability to attach to the County, Plaintiff must show an underlying 
constitutional violation and that the violation resulted from an official municipal policy, 
an unofficial custom, or a deliberately indifferent failure to train or supervise. Mick v. 
Raines, 883 F.3d 1075, 1079 (8th Cir. 2018). 

As to the underlying constitutional violation, while the County correctly asserts 
that pretrial detainees’ rights are examined under the Fourteenth Amendment and not the 
Eighth, because pretrial detainees are entitled to at least the same level of rights as 
inmates, the analysis is the same. See Ryan v. Armstrong, 850 F.3d 419, 425 (8th Cir. 
2017). In both cases, the plaintiff must show “that he suffered from an objectively 

serious medical need and that one or more defendants “had actual knowledge of that need 
but deliberately disregarded it.” Id. “To be objectively serious, a medical need must 
have been diagnosed by a physician as requiring treatment.” Jackson v. Buckman, 756 
F.3d 1060, 1065 (8th Cir. 2014). And to demonstrate deliberate indifference, a plaintiff 
must show that a prison medical provider’s “actions were so inappropriate as to evidence 
intentional maltreatment or a refusal to provide essential care.” Id. at 1066. 
Here, Plaintiff has adequately pled a constitutional violation by alleging facts to 

plausibly demonstrate that he had a medically diagnosed condition requiring medication, 
which Stuckey-Parchmon intentionally and unjustifiably refused to give him. 
 As to municipal liability, as relevant here, a plaintiff may establish liability based 
on “unofficial” policy or a “custom.” To do so, a plaintiff must plead facts sufficient to 
plausibly infer “(1) the existence of a continuing, widespread, persistent pattern of 

unconstitutional misconduct by the municipality’s employees; (2) deliberate indifference 
to or tacit authorization of such conduct by the municipality’s policymaking officials 
after notice to the officials of that misconduct; and (3) that [the plaintiff] was injured by 
acts pursuant to the municipality’s custom, i.e., that the custom was a moving force 
behind the constitutional violation.” Meier v. St. Louis, Missouri, City of, 934 F.3d 824, 

828 (8th Cir. 2019) (cleaned up and citations omitted). 
“[M]ultiple incidents involving a single plaintiff could establish a ‘custom’ if 
some evidence indicates that the incidents occurred over a course of time sufficiently 
long to permit notice of, and then deliberate indifference to or tacit authorization of, the 
conduct by policymaking officials.” Johnson v. Douglas Cty. Med. Dep't, 725 F.3d 825, 

828–29 (8th Cir. 2013). At this stage, Plaintiff’s allegations of five separate incidents of 
refusal to provide medication, and notice to supervisors on each occasion, are sufficient 
to plausibly infer an unofficial policy or custom of constitutional violations. See, e.g., 
Valentino v. Vill. of S. Chicago Heights, 575 F.3d 664, 675 (7th Cir. 2009) (“If the same 
problem has arisen many times and the municipality has acquiesced in the outcome, it is 
possible (though not necessary) to infer there is a policy at work.”) (citation omitted). 
The County argues that it cannot be held liable because, according to Plaintiff’s 

own allegations and grievances, the County investigated the incidents and intervened on 
at least the first two occasions to find another nurse to administer the medications. But, 
taking Plaintiff’s allegations as true, after those two occasions and despite the County 
having notice of the issue, Stuckey-Parchmon continued to intentionally deny Plaintiff his 
medications on at least three more occasions. Moreover, the County did not respond to 

any of Plaintiff’s grievances regarding these issues. It can be reasonably inferred from 
the complaint that, after receiving notice of the issue, the County did not take sufficient 
(or any) action to correct Stuckey-Parchmon’s behavior. As such, at this stage, 
Plaintiff’s has sufficiently pled municipal liability. See Hare v. Cty. of Kane, No. 14 C 
1851, 2014 WL 7213198, at *2-4 (N.D. Ill. Dec. 15, 2014) (concluding that 

a single plaintiff’s allegations of frequent instances of inadequate medical care in a jail 
over a 25-day period were sufficient to “provide an implication that” a widespread policy 
existed of providing all inmates with that particular plaintiff’s medical needs with 
inadequate care). The Court will deny the County’s motion to dismiss Count I. 
Grievance Procedure (Count II) 

Although Plaintiff adequately pled a constitutional violation in Count I, the same 
is not true for Count II. To the extent Count II alleges a constitutional violation arising 
out of the County’s failure to provide or adhere to its written grievance procedure, the 
claim fails because there is no constitutional right to a prison grievance procedure. See 
Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993) (holding that no constitutional 
violation arose from officer’s failure to process prison grievances because a prison 
grievance procedure “does not give rise to a protected liberty interest requiring the 
procedural protections envisioned by the fourteenth amendment’). 
 Plaintiff suggests in his response to the motion to dismiss that the County’s failure 
to respond to his grievances “are further pleaded facts showing the County’s failure to 
train Stuckey-Parchmon amounted to deliberate indifference towards the constitutional 
rights of persons with whom Stuckey-Parchmon would interact, and was the cause of the 
unconstitutional denial of medical treatment Plaintiff has alleged.” ECF No. 41 at 1-2. 
That may be true, but such allegations are therefore pled in support of Count I’s claim 
alleging municipal liability for deliberate indifference to a serious medical need. The 
County’s failure to respond to grievances does not give rise to an independent 
constitutional violation. See Buckley, 997 F.2d at 495. The Court will therefore grant 
the County’s motion to dismiss Count II. 
 CONCLUSION 
 Accordingly, 
 IT IS HEREBY ORDERED that St. Louis County’s motion to dismiss is 
GRANTED in part, as to Count II only, and otherwise DENIED. ECF No. 38. 

 wine Sinha “Ch — 
 UNITED STATES DISTRICT JUDGE 

Dated this 28th day of October, 2019.