# United States Court of Appeals
## For the Eighth Circuit

_____

No. 25-2552

_____

Permanent General Assurance Corporation

*Plaintiff - Appellant*

v.

Andrew Spooner

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Western District of Missouri - Jefferson City

_____

Submitted: April 14, 2026
Filed: May 5, 2026

_____

Before KELLY, ARNOLD, and KOBES, Circuit Judges.

_____

ARNOLD, Circuit Judge.

After the vehicles Andrew Spooner and Casey Graham were driving collided with each other on a Missouri road, injuring Spooner, he and Graham's insurer, Permanent General Assurance Corporation (PGAC), discussed a settlement. In PGAC's view, the parties had reached an enforceable agreement, so when Spooner later said they had not, PGAC sued him for breach of contract. Spooner moved to

dismiss the lawsuit on the ground that no contract had actually been formed. The district court[1] agreed and dismissed the case—a decision that PGAC takes issue with on appeal. Reviewing the court's decision to dismiss de novo, *see Torti v. Hoag*, 868 F.3d 666, 671 (8th Cir. 2017), we affirm.

At this stage of the case, we accept the factual allegations in PGAC's complaint as true. *See id.* According to the complaint, the vehicle Graham was driving was owned by one Brandon Ward, with whom PGAC had an insurance policy that provided up to $25,000 in bodily injury coverage per person injured. Because Ward had given Graham permission to drive the vehicle, PGAC concluded that the policy's coverage extended to claims arising from Graham's operation of the vehicle.

Some while after the accident, Spooner sent PGAC a letter in which he averred that he had been badly hurt and had been hospitalized for months. He explained that, though he didn't "want the driver to get in trouble or have to pay [him] a lot of money," he had many medical bills, couldn't work, and needed help. So Spooner proposed that if PGAC paid him Graham's "insurance money," Spooner would "be good with that and not try to get any money from Mr. Graham or get a lawyer."

PGAC responded shortly after with its own letter. It wrote that "[t]his letter is an offer to settle the [l]iability," and "to conclude this claim, we are asking you to complete and return the enclosed document(s)." It went on to say that PGAC "has agreed to tender the $25,000.00 policy limits in exchange for a signed release." Enclosed with the letter was a release and indemnity agreement for Spooner's signature providing that, in exchange for $25,000, Spooner would "release and discharge Brandon Ward and Casey Graham . . . from all personal injury claims for all damages" he sustained from the accident.

---

[1]The Honorable Beth Phillips, then Chief Judge, now United States District Judge for the Western District of Missouri.

A few weeks later an attorney responded to PGAC with a letter on Spooner's behalf. She explained that the release agreement PGAC sent Spooner did not mirror the offer he had made, as it included a provision releasing Ward from liability in addition to Graham. So Spooner regarded the response as a rejection of his settlement offer. It's at this point that PGAC turned to the district court, maintaining that its response to Spooner's offer was an acceptance of it and not a rejection. The district court, though, agreed with Spooner that PGAC's response was not a mirror-image acceptance but instead a counteroffer, and so no contract ever came into being.

All agree that Missouri law governs in determining whether the parties entered into a contract, *see Schlecht v. Goldman*, 157 F.4th 963, 966 (8th Cir. 2025), which is an element of PGAC's breach-of-contract claim. *See Bell v. Shelter Gen. Ins. Co.*, 701 S.W.3d 614, 618 (Mo. banc 2024). For a contract to arise, the parties must have had "a meeting of the minds" and mutually assented to the essential terms of an agreement. *See Schlecht*, 157 F.4th at 967. "A meeting of the minds occurs if there is a definite offer, an unequivocal acceptance, and a mutual agreement on the same thing in the same sense at the same time." *See id.* Stated differently, "a contract does not exist without a definite offer and a 'mirror-image' acceptance." *See Stickler v. McGinnis*, 649 S.W.3d 38, 44 (Mo. Ct. App. 2022). If a purported acceptance includes new or different terms, then it operates legally as a counteroffer and a rejection of the original offer. *See id.* Courts determine whether there's been a meeting of the minds by examining what the parties said and did, not their subjective intentions or beliefs. *See id.*

We agree with the district court that PGAC's response was not a mirror-image acceptance of Spooner's offer because it included an additional term—a release of claims against Ward. The response therefore amounted to a rejection of Spooner's offer and a counteroffer, *see id.*, which Spooner never accepted.

PGAC resists this straightforward conclusion by pointing out that parties can enter into contracts if they agree on the essential terms, leaving non-essential terms to be agreed upon later in a signed release. *See Matthes v. Wynkoop*, 435 S.W.3d 100, 107 (Mo. Ct. App. 2014). And, PGAC's argument continues, the scope of the release here was simply a non-essential term. That contention might surprise anyone who read PGAC's response to Spooner's offer. Nowhere did PGAC state in that response that it was accepting the offer; instead it couched its response as a counteroffer that depended on Spooner's assent to the release. The letter itself stated that it was "an offer to settle," and that, "[i]n order to conclude this claim," Spooner needed to sign and return the release. In other words, Spooner needed to accept PGAC's counteroffer before a deal was struck. And even though the letter later said that PGAC had "agreed to tender the $25,000.00 policy limits in exchange for a signed release," this is hardly the "unequivocal acceptance" that Missouri law requires to show a meeting of the minds. *See Schlecht*, 157 F.4th at 967. The district court therefore correctly held that the parties did not enter into an enforceable agreement and so properly dismissed the complaint. *Cf. Bennett v. Novas*, 874 S.E.2d 871, 873–76 (Ga. Ct. App. 2022).

PGAC also contends that, in ruling on the motion to dismiss, the district court focused too much on the attachments, didn't take the complaint's factual allegations as true, and failed to give PGAC the benefit of all reasonable inferences that could be drawn from the facts. Our reading of the court's opinion, though, leads us to conclude otherwise. The court properly credited the complaint's factual allegations, and it was under no obligation to accept any legal conclusion that PGAC drew from the parties' correspondence, *see Torti*, 868 F.3d at 671, in particular the conclusion that PGAC's response to Spooner's offer amounted to an acceptance that gave rise to an enforceable settlement agreement. It is also undisputed that the court could consider the parties' correspondence attached to the complaint. *See Ashanti v. City of Golden Valley*, 666 F.3d 1148, 1151 (8th Cir. 2012). And to the extent that the allegations in the complaint contradict the actual letters they refer to, the court could properly disregard those allegations. *See Meardon v. Register*, 994 F.3d 927, 935 (8th

-4-

Cir. 2021). In short, we discern no error in the court's approach in resolving the motion to dismiss.

Finally, PGAC notes that at the end of its briefing before the district court on the motion to dismiss, it asked for leave to amend the complaint should the court find it lacking, yet the court didn't respond to this request. But these kinds of "fleeting references to amendment are insufficient" to bring the matter to the court's attention. *See In re Crop Inputs Antitrust Litig.*, 2026 WL 924130, at *5 (Apr. 6, 2026) (citing *In re 2007 Novastar Fin. Inc., Sec. Litig.*, 579 F.3d 878, 884–85 (8th Cir. 2009)). At a minimum PGAC should have moved separately to amend the complaint and offered the proposed complaint or the substance of the proposed complaint for the court to consider. *See In re 2007 Novastar*, 579 F.3d at 884–85. Since it didn't, we discern no reversible error.

Affirmed.

_____